475 A.2d 765

**COMMONWEALTH of Pennsylvania**

v.

**Arthur GELORMO, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Herbert THOMAS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 4, 1983.

Filed April 13, 1984.

Petition for Allowance of Appeal Denied Aug. 21, 1984.

David Del Pizzo, Assistant Public Defender, Norristown, for appellants.

Joseph Hylan, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

Herbert Thomas and Arthur Gelormo were tried jointly on charges arising from a robbery on April 21, 1979 at the residence of Richard Tarus in Upper Providence Township, Montgomery County. The jury which heard the evidence found Gelormo guilty of robbery, burglary, theft, recklessly endangering another person, terroristic threats and conspiracy. The same jury found Thomas guilty of criminal conspiracy. Post-verdict motions were denied, and sentences of imprisonment were imposed. Separate appeals were filed and consolidated for argument. We will consider the following arguments advanced by both appellants: (1) that

the trial court should have quashed the informations because the District Justice denied a defense request to continue the preliminary hearing in order to allow defendants additional time within which to employ the services of a stenographer; (2) that the trial court erred in denying a defense request for the appointment of an independent, ballistics expert; and (3) that the trial court erred in refusing to order the prosecuting attorney to obtain during trial an amended plea agreement entered by a Commonwealth witness and the District Attorney of Chester County.[1] Thomas argues separately that he was prejudiced by the trial court's erroneous denial of his pre-trial motion for severance and by an excessive sentence. We will discuss these issues seriatim.

At or about 1:00 a.m. on April 21, 1979, according to the Commonwealth's evidence, Gelormo entered the Tarus home wearing a stocking over his head and brandishing a pistol. He ordered Tarus' house guest, Kevin Darula, to bind Tarus with the telephone cord; and, after this had been accomplished, he ordered Darula to remove a valuable ring and cash from Tarus' person. When Tarus protested, Gelormo discharged the weapon. Darula thereupon took the ring and money from Tarus and handed it to Gelormo, following which Gelormo locked Darula in the cellar and fled. The robbery remained unsolved for almost two years until Richard Falasco, who had been arrested with Gelormo for numerous offenses in Chester County, gave a statement regarding the Tarus robbery. He said that Thomas had supplied the gun used by Gelormo in the Tarus robbery

1. Appellants have also raised the following issues:
   1) Did the trial court err in denying appellants' motion to quash and dismiss due to the unreasonable delay prior to appellants' arrest?
   2) Did the trial court err in denying a mistrial because of a statement by a Commonwealth witness that he had been threatened and/or because of an allegedly improper reference by the prosecutor during summation to that witness' right not to testify?
   After a careful review of the record, we are persuaded that these issues have been thoroughly reviewed and correctly decided by the trial judge in a comprehensive opinion. There is no need to add thereto.

while he, Falasco, had driven Gelormo to Tarus' home and waited with the car while Gelormo entered the home. After the robbery had been committed, Falasco and Gelormo returned to a bar operated by Thomas and gave him the ring. This was later sold for $1,250, which was divided among the men.

Criminal complaints were filed before District Justice Dorine Sutch, who scheduled a preliminary hearing for March 12, 1981. On that day, the defendants appeared with counsel and requested a postponement so that they might obtain the presence of a stenographer.[2] The request for a continuance was denied, and the preliminary hearing proceeded. After the case had been returned to court and informations filed, the defendants moved to quash the informations on grounds that the denial of their motion to continue the preliminary hearing had deprived them of the right to have the proceedings recorded stenographically. The trial court concluded that the District Justice's denial of the defendants' motion for a continuance had not been an abuse of discretion and had not violated the defendants' rights to due process. Therefore, the motion to quash the information was denied.

■ Pa.R.Crim.P. 142 provides that a District Justice "may" grant a continuance of the preliminary hearing "for cause shown."[3] Whether to grant a motion for continuance is discretionary with the District Justice, and an order granting or refusing a continuance of a preliminary hearing will not be disturbed in the absence of an abuse of discretion.

2. Although there is no record of the proceedings had before the District Justice, counsel have stipulated that such a request was made.

3. At the time of appellants' hearing, Rule 142 provided: "The issuing authority may, for cause shown, grant a continuance and shall note every continuance together with the reasons therefor on his docket." Rule 142 has been amended since the time of appellants' trial and now requires a recording of the grounds for the continuance, the identity of the requesting party, and the new date of the hearing, as well as the reasons for setting that date.

Pa.R.Crim.P. 141 provides in relevant part as follows:

> (c) The defendant ... may, if he desires:
>
> . . . .
>
> (4) make written notes of the proceedings, or have his counsel do so, or make a stenographic, mechanical or electrical record of the proceedings.

If appellants had arranged to have a stenographer present, there can be no doubt that the stenographer would have been permitted to record the proceedings. See: *Wilson v. Blake,* 475 Pa. 627, 381 A.2d 450 (1977). In fact, however, appellants did not make the necessary arrangements, and a stenographer was not present to record the proceedings. Their failure to have a stenographer present was not explained. Indeed, it was not shown that they had made any effort whatsoever to obtain a stenographer. Moreover, they had made no pre-preliminary hearing request for a stenographer.[4] Nor had they made an effort to record the testimony mechanically or electrically. Instead, appellants appeared at the preliminary hearing, where the Commonwealth was ready to proceed, and made a last minute request for a continuance. There was no abuse of discretion in denying such a request. The lack of a transcript of a preliminary hearing is not, *per se,* a denial of due process. *Commonwealth v. Hampton,* 462 Pa. 322, 329, 341 A.2d 101, 105 (1975), citing *Commonwealth v. Minifield,* 225 Pa.Super. 149, 310 A.2d 366 (1973); *Commonwealth v. Walley,* 262 Pa.Super. 496, 503, 396 A.2d 1280, 1284 (1978). In this case, appellants' counsel were present and were permitted to take notes during the preliminary hearing. The denial of a continuance to provide additional time to arrange for the presence of a stenographer, therefore, was not a violation of due process.

4. The predecessor to Rule 141(c)(4), Rule 120(b)(4), specified that if a defendant wanted to have a stenographer present, he had to do so "at his own expense." Upon amendment and renumbering of Rule 120(b), this language was deleted. It is an open question whether, and to what extent, an indigent defendant is entitled to the services of a stenographer, at public expense, to record a preliminary hearing. This issue is not before us at the present time.

■ Under the law of Pennsylvania, as in a majority of states, the appointment of an expert witness or an investigator to assist in the preparation of a defense is vested in the sound discretion of the trial court.[5] See: *United States ex rel. Dessus v. Commonwealth*, 316 F.Supp. 411, 418 (E.D.Pa.1970), *aff'd*, 452 F.2d 557, 563 (1971), *cert. denied*, 409 U.S. 853, 93 S.Ct. 184, 34 L.Ed.2d 96 (1972); *Commonwealth v. Box*, 481 Pa. 62, 64–65, 391 A.2d 1316, 1317 (1978), *aff'g Commonwealth v. Box*, 98 Dauph. 446, 451 (1976); *Commonwealth v. Scott*, 469 Pa. 258, 263–264, 365 A.2d 140, 142–143 (1976); *Commonwealth v. Phelan*, 427 Pa. 265, 275–276, 234 A.2d 540, 546–547 (1967), *cert. denied*, 391 U.S. 920, 88 S.Ct. 1803, 20 L.Ed.2d 657 (1968), *overruled on other grounds, Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976); *Commonwealth v. Rochester*, 305 Pa.Super. 364, 381, 451 A.2d 690, 699 (1982). See and compare: *State v. Knapp*, 114 Ariz. 531, 540, 562 P.2d 704, 713 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Pickens v. State*, 279 Ark. 457, 458, 652 S.W.2d 626, 626 (1983); *People v. Hunt*, 133 Cal.App.3d 543, 554, 184 Cal.Rptr. 197, 202 (1982); *Wilson v. State*, 250 Ga. 630, 633, 300 S.E.2d 640, 645 (1983); *State v. Olin*, 103 Idaho 391, 395, 648 P.2d 203, 207 (1982); *Griffin v. State*, Ind., 415 N.E.2d 60, 63 (1981); *State v. Reynolds*, 230 Kan. 532, 534, 639 P.2d 461, 464 (1982); *Commonwealth v. Dalton*, 385 Mass. 190, 195, 431 N.E.2d 203, 207–208 (1982); *State v. Suggett*, 200 Neb. 693, 697, 264 N.W.2d 876, 879 (1978); *State v. Alford*, 298 N.C. 465, 469, 259 S.E.2d 242, 245 (1979); *State v. Archambeau*, 333 N.W.2d 807, 811 (S.D.1983); *Quinones v. State*, 592 S.W.2d 933, 942–943

---

5. Pursuant to the Act of March 22, 1907, P.L. 31, § 1, 19 P.S. § 784 (as amended) (repealed), an indigent defendant accused of *murder* was entitled to an appointed investigator or expert under certain circumstances. This statute was repealed by the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, No. 53, § 2a[895], 42 Pa.C.S. § 20002(a)[895] and replaced in part by 42 Pa.C.S. § 1722(a)(1) and 42 Pa.C.S. § 3722. Neither of these statutory provisions expressly addresses the question of when and under what circumstances an indigent defendant is entitled to the services of a court appointed expert at public expense. See: *Commonwealth v. Rochester*, 305 Pa.Super. 364, 381, 451 A.2d 690, 699 (1982).

(Tex.Cr.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); *Jackson v. State,* 624 P.2d 751, 755–756 (Wyo.), *cert. denied,* 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981). See generally: Anno., Right of Indigent Defendant in Criminal Case to Aid of State by Appointment of Investigator or Expert, 34 A.L.R.3d 1256 (1970). For the reasons hereinafter set forth, we conclude that the trial court did not abuse its discretion in denying appellants' request for the appointment of an independent ballistics expert.

■ A spent .32 caliber bullet casing had been found at the Tarus home by police investigators following the robbery. At trial, a 7.65 mm. pistol was produced by the Commonwealth and identified by Falasco as the gun which Thomas had given to Gelormo for use in committing the robbery. However, there was no ballistics evidence connecting the .32 casing with the 7.65 mm. gun.

After the spent casing had been found, it was sent to the State Police Crime Lab for examination. It was there determined that the bullet had been fired from a 7.65 mm. pistol which had been used in two Chester County robberies allegedly perpetrated by appellants. Copies of these ballistics reports had been supplied to counsel for appellants in the Montgomery County action. It was these reports which had prompted defense counsels' request for the appointment of an independent ballistics expert to make an additional test. Such an expert was needed, they represented to the court, to verify or contradict the findings of the Commonwealth's experts. The prosecuting attorney argued that verification or contradiction would be unnecessary because the Commonwealth did not intend to use the ballistics evidence at trial. The trial court thereupon refused the request.

Appellants had been given copies of the Commonwealth's ballistic reports and knew the results of the tests which had been conducted. It was not an abuse of discretion for the trial court to refuse to order an additional test. See: *Commonwealth v. Phelan, supra.* See also: *Moore v.*

*State,* 240 Ga. 807, 813, 243 S.E.2d 1, 6–7, *cert. denied,* 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 249 (1978) (appellant's request for independent criminologist to perform ballistics testing, inter alia, duplicating tests done by state technicians, properly denied).[6] Moreover, appellants' purpose for requesting an independent ballistics test, i.e., to contradict the Commonwealth's tests, became moot after the Commonwealth agreed not to use the evidence at trial.

■ Contrary to appellants' contention, there is no constitutional mandate, either federal or state, that experts be appointed at public expense to assist in the preparation of a defense whenever requested by one accused of crime. See: *United States ex rel. Smith v. Baldi,* 344 U.S. 561, 568, 73 S.Ct. 391, 395, 97 L.Ed. 549, 556 (1953) (psychiatrist); *Bradbury v. Wainwright,* 658 F.2d 1083, 1086 (5th Cir.1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982) (psychiatrist); *Payne v. Thompson,* 622 F.2d 254, 255 (6th Cir.), *cert. denied,* 449 U.S. 1063, 101 S.Ct. 788, 66 L.Ed.2d 607 (1980) (expert witnesses and psychiatrist); *Watson v. Patterson,* 358 F.2d 297, 298 (10th Cir.), *cert. denied,* 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103 (1966) (expert witnesses); *Commonwealth v. Rochester, supra* 305 Pa.Super. at 381, 451 A.2d at 699 (forensic pathologist). See also: *State v. Williams,* 657 S.W.2d 405, 411 (Tenn.1983) (forensic pathologist).

Prior to trial the prosecution supplied the defense with a "Memorandum of Understanding" between Falasco and the District Attorney of Chester County. By the terms thereof, Falasco had agreed to cooperate with the authorities in Chester County and to give truthful testimony regarding crimes in which he had been involved in Chester County. In return therefor, the maximum sentence to be imposed against him was to be four to eight years in prison for four burglaries, to run concurrently with any sentences imposed

6. The decision of the Supreme Court of Georgia in *Moore* was subsequently modified in *Sabel v. State,* 248 Ga. 10, 282 S.E.2d 61, *cert. denied,* 454 U.S. 973, 102 S.Ct. 524, 70 L.Ed.2d 393 (1981) as stated in *Payne v. State,* 249 Ga. 354, 291 S.E.2d 226 (1982).

by the courts of Montgomery County and also with any federal sentences imposed. During cross-examination of Falasco, it became apparent that the "Memorandum of Understanding" had been replaced by a new agreement in Chester County. This had been prompted by a decision of the federal government not to prosecute Falasco. The new agreement provided for sentencing in Chester County for a total term of imprisonment of not less than 23 months nor more than 59 months, to be followed by probation for twenty years. It is undisputed that this new agreement had not previously been known to the prosecuting attorney in Montgomery County and that he did not have a copy thereof. Defense counsel asked the court to direct the Commonwealth to obtain a copy of the Chester County agreement and provide the defense therewith in order to continue its cross-examination of Falasco. The trial court declined to do so.

Appellants argue on appeal that the Commonwealth violated the mandatory discovery requirements of Pa.R. Crim.P. 305 B(1) or, in the alternative, that the trial court abused its discretion in refusing to compel the production of the document under the discretionary provisions of Rule 305 B(2).[7] We disagree with both contentions.

7. Pa.R.Crim.P. 305 B provides in pertinent parts:
   **B.  Disclosure by the Commonwealth**
   (1) *Mandatory:* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items
   . . . .
   (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence;
   . . . .
   (2) *Discretionary with the Court:* In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

■■ "Discoverable evidence *in the Commonwealth's possession* may be discoverable either by mandate of [rule 305 B(1)] or in the discretion of the trial court ([rule] 305 B(2)), depending on the type of evidence sought." *Commonwealth v. Thiel*, 323 Pa.Super. 92, 97, 470 A.2d 145, 148 (1983) (emphasis added). In some circumstances, evidence tending to impeach the credibility of a witness, if possessed by the Commonwealth, may be material and subject to discovery under Rule 305 B(1). See generally: *Commonwealth v. Jenkins*, 476 Pa. 467, 383 A.2d 195 (1978) (former Rule 310). This rule, however, is inapplicable instantly, for the Commonwealth was completely unaware of the second memorandum until Falasco revealed it during cross-examination on the third day of trial.

■■ "[T]he prosecution does not violate discovery rules when it fails to provide the defense with evidence that it does not possess *and of which it is unaware* during pre-trial discovery, even if the evidence is in police custody." *Commonwealth v. Bonacurso*, 500 Pa. 247, 251 n. 3, 455 A.2d 1175, 1177 n. 3, *cert. denied*, —— U.S. ——, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983), citing *Commonwealth v. Starks*, 304 Pa.Super. 527, 450 A.2d 1363 (1982) (emphasis in original). Rule 305 B(1) is not a tool to be used by defense counsel to compel the Commonwealth to obtain evidence to which the defense has equal access.

■■ The trial court did not abuse the discretion vested in it by Rule 305 B(2) when it refused to direct the Commonwealth to produce evidence during trial which was then in the possession of the District Attorney of another county. This is particularly clear where, as here, the witness conceded the existence of such an agreement during cross-examination and where it was the existence of the

. . . .
(c) all written or recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not;
(d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

agreement and not the precise terms thereof which were relevant to attack the credibility of the witness. Defense counsel was aware of the agreement between the witness and the District Attorney in Chester County and knew of the leniency which had been promised in exchange for the witness' testimony. Defense counsel, during cross-examination of the witness, had copies of the transcripts of the sentencing hearings which had been held following the entry of Falasco's pleas of guilty to four burglaries in Chester County. Cross-examination was lengthy and included every conceivable basis for bias that would affect the witness' credibility. Appellants' fair trial rights were not impaired by the court's refusal to order the Commonwealth to obtain a copy of a plea agreement in another county which was not then in the prosecution's possession.

Thomas argues that the trial court erred when it denied his request for a separate trial. We disagree. Whether defendants should be tried jointly or separately is committed to the sound discretion of the trial judge, whose rulings on such matters will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Hamm*, 325 Pa.Super. 401, 409, 473 A.2d 128, 132 (1984), quoting *Commonwealth v. Tolassi*, 258 Pa.Super. 194, 199, 392 A.2d 750, 753 (1978), *aff'd*, 489 Pa. 41, 413 A.2d 1003 (1980); *Commonwealth v. Middleton*, 320 Pa.Super. 533, 551, 467 A.2d 841, 850 (1983). "[W]here a conspiracy to commit crime is alleged, the defendants should be tried together, 'unless it can be shown that one or more of the defendants will be actually prejudiced by doing so.'" *Commonwealth v. Hamm, supra* 325 Pa.Super. at 410, 473 A.2d at 133, quoting *Commonwealth v. Johnson*, 291 Pa.Super. 566, 582, 436 A.2d 645, 653 (1981). See: *Commonwealth v. Katsafanas*, 318 Pa.Super. 143, 158, 464 A.2d 1270, 1278 (1983); *Commonwealth v. Tolassi, supra* 258 Pa.Super. at 200, 392 A.2d at 753. Here, a conspiracy was charged. Thomas was accused of planning the robbery which Gelormo committed. He was also charged with supplying the gun and with fencing and sharing the fruits of the crime.

Falasco's testimony was an essential part of the Commonwealth's case against both men. Under these circumstances, a consolidated trial was proper. See: *Commonwealth v. Hamm, supra* 325 Pa.Super. at 408–409, 473 A.2d at 132; *Commonwealth v. Fields,* 317 Pa.Super. 387, 398, 464 A.2d 375, 381 (1983); *Commonwealth v. Norman,* 272 Pa.Super. 300, 306, 415 A.2d 898, 901 (1979).

Finally, Thomas contends that a sentence of four to ten years was excessive.[8] However, "[i]t is well settled that Pennsylvania trial judges are vested with broad sentencing discretion with which the appellate courts will not interfere absent manifest abuse.... In order to constitute an abuse of discretion, a sentence must either exceed statutory limits or be manifestly excessive." *Commonwealth v. Black,* 321 Pa.Super. 44, 45, 467 A.2d 884, 885 (1983) (citations omitted). See: *Commonwealth v. Smillie,* 316 Pa.Super. 83, 88, 462 A.2d 804, 806 (1983). Thomas' sentence was neither outside the prescribed statutory range nor manifestly excessive. The sentencing court's statement of reasons for the sentence included Thomas' role in the instant offense and prior convictions for a robbery and two drug offenses. Contrary to Thomas' assertion, the fact that Gelormo received a sentence of not less than three nor more than ten years does not indicate an abuse of discretion. Divergent sentences for co-defendants are permissible and will be upheld where, as here, there was an adequate statement of reasons. See: *Commonwealth v. Sinwell,* 311 Pa.Super. 419, 427, 457 A.2d 957, 960 (1983); *Commonwealth v. Parry,* 306 Pa.Super. 390, 394, 452 A.2d 781, 783 (1982); *Commonwealth v. Landi,* 280 Pa.Super. 134, 140, 421 A.2d 442, 444 (1980).

**8.** Thomas was sentenced on February 3, 1982. His motion for reconsideration of sentence was filed on February 19, 1982. This was six days late. Pa.R.Crim.P. 1410. The late filing was not raised by the Commonwealth nor by the sentencing court. This procedural irregularity also has not been raised on appeal. Therefore, we do not now consider the effect of a late filing of a motion to modify sentence. But see and compare: *Commonwealth v. Gregory,* 309 Pa.Super. 529, 455 A.2d 1210 (1983).

■ We find no merit in Thomas' additional contention that the sentence imposed was "illegal" because it was made to run consecutively to sentences then being served. This is not a case in which the sentencing court was unaware of prior sentences. On the contrary, the court was fully aware of Thomas' other sentences. These included backtime for a parole violation which was due to expire on April 30, 1984, and a consecutive term of six to fifteen years imposed in June, 1979, on a Chester County conviction. The court, although aware of these sentences, did not refer to them specifically and did not compute the date upon which its sentence would commence. It noted merely that its sentence was to be consecutive to earlier sentences. This did not render the sentence illegal.

The judgments of sentence are affirmed.