591 A.2d 1055

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Stuart SZCZESNIEWSKI, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1990.

Filed April 15, 1991.

Rearguments Denied June 18, 1991.

618

Susan Bruno, Philadelphia, for appellant.

Alan Sacks, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before DEL SOLE, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County, following the conviction of appellant on two counts of murder in the first degree. The jury determined that appellant had conspired with Herbert Leitner and Edward Peterson in the execution style slaying of Mario Papini and his girlfriend Kathleen Logan.

Appellant raises five issues on appeal: 1) Did the trial court err by permitting evidence of uncharged drug crimes to be admitted; 2) Was the evidence insufficient; 3) Did the trial court err by permitting Assistant District Attorney Charles F. Gallagher to testify concerning why Commonwealth witness Wayne Szczesniewski was not charged with any crime in relation to the murders; 4) Did the trial court err by permitting evidence of a previous attempt months earlier to kill Mario Papini to be admitted; and 5) Did the sentencing court abuse its discretion by failing to set forth adequate reasons to justify the gross disparity of sentences imposed on appellant and his accomplices who were the principals in the murder.

Having reviewed the record and the parties' briefs, we find that the trial court has adequately addressed and correctly disposed of the first four allegations of error raised by appellant. Accordingly, we affirm on the opinion of the court below, and we adopt the opinion of the Honorable Lynne M. Abraham as our own for the purposes of allocatur.

We comment further only to address appellant's attack on his sentence. Appellant was tried before Judge Abraham who then imposed two *consecutive* life sentences. Appellant's accomplices were tried before Judge George J. Ivins who, at the time of appellant's sentencing, had already imposed two *concurrent* life sentences each upon Leitner and Peterson. Appellant argues that Judge Abraham erred by failing to place on the record adequate reasons for the

gross disparity of sentences between appellant and his accomplices. Herein, appellant relies upon the following language in *Commonwealth v. Holler*, 326 Pa.Super. 304, 310, 473 A.2d 1103, 1107 (1984):

> ... We recognize that it was not incumbent upon the lower court to be guided by the sentence a different court imposed on appellant's co-defendants. *Commonwealth v. Neal*, 258 Pa.Super. 375, 383, 392 A.2d 841, 845 (1978). *Also see Commonwealth v. Hollerbush*, 298 Pa.Super. 397, 444 A.2d 1235 (1982). Nevertheless, we would also point out that there should not be a great disparity in the sentences imposed on codefendants unless facts exist to warrant the unequal sentences. *See Commonwealth v. Sinwell*, 311 Pa.Super. 419, 457 A.2d 957 (1983); *Commonwealth v. Parry*, 306 Pa.Super. 390, 452 A.2d 781 (1982). If the court believes that sufficient factors exist to warrant the disparity in the sentences, the reasons therefore should be articulated on the record. *Commonwealth v. Sinwell, supra.*

See also *Commonwealth v. Myers*, 370 Pa.Super. 326, 536 A.2d 428 (1988).

 Despite common misconception about "life sentences", a "life sentence" in Pennsylvania is just as the name implies, imprisonment for life. After final appellate review of the sentence, only the Governor, based on the recommendation of the Board of Pardons, may commute life imprisonment to life on parole. See 37 Pa.Code § 81.1, *et seq.* Statistics indicate that only 32 life sentences were commuted between 1980 and 1987 and that the average time served for those commuted was 19.1 years.[1]

Due to the nature of a life sentence, two consecutive life sentences are, in reality, no longer than two concurrent life sentences or, for that matter, one life sentence. All would

1. The Department of Corrections Statistical Report, 1980–1987, reveals the following:

| Year | Total Lifers | Commuted | Died | Total Discharged |
|------|------|------|------|------|
| 1980 | 848 | 16 | 6 | 22 |
| 1981 | 964 | 5 | 5 | 10 |

require appellant to spend his life in prison. Instantly, it is ludicrous to think that if the Governor decided to commute the first of appellant's life sentences to life on parole, he would not also similarly commute his second sentence. Thus, we find that there is not a "great disparity" between appellant's consecutive life sentences and his accomplices' concurrent life sentences.

Second, appellant and his accomplices appeared before different judges for sentencing. Therefore, Judge Abraham was not required to explain the alleged disparity in sentencing. *Myers*, 536 A.2d at 430; *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990) (the fact that appellant received a greater sentence than that of his co-conspirators is not in and of itself sufficient grounds to merit resentencing); *Hollerbush*, 444 A.2d at 1241.[2]

Moreover, assuming that Judge Abraham was required to explain her reasons for the difference in sentences, we find that she did place adequate reasons on the

| Year | Total Lifers | Commuted | Died | Total Discharged |
|------|------|------|------|------|
| 1982 | 1074 | 4 | 4 | 8 |
| 1983 | 1195 | 3 | 8 | 11 |
| 1984 | 1311 | 1 | 7 | 8 |
| 1985 | 1429 | 2 | 8 | 10 |
| 1986 | 1544 | 1 | 7 | 8 |
| 1987 | 1674 | 0 | 5 | 5 |
| Total | | 32 | 50 | 82 |
| Average Time Served | | 19.1 yrs | 9.9 yrs | 13.5 yrs |

2. We note that the language in *Holler*, 473 A.2d at 1107, regarding the requirement that "great disparity" in sentence must be explained, which was cited with approval in *Myers*, 536 A.2d at 430, is dicta with questionable support. Although the *Holler* court commented on disparate sentences by different judges, it did so unnecessarily as the court had already determined remand for resentencing was required because of a woefully inadequate sentencing record. *Commonwealth v. Krysiak*, 369 Pa.Super. 293, 296, 535 A.2d 165, 167 (1987), allocatur denied 518 Pa. 637, 542 A.2d 1366.

Further, in support of the proposition that a "great disparity" in sentences must be explained, the *Holler* court cited to *Sinwell, supra,* and *Parry, supra.* See also *Krysiak*, 535 A.2d at 167 citing, *Commonwealth v. Gelormo*, 327 Pa.Super. 219, 475 A.2d 765 (1984). *Sinwell, supra, Parry, supra,* and *Gelormo, supra,* all relate to disparity in sentences imposed upon codefendants by the *same* judge, not a differ-

record. Instantly, appellant's life sentence was mandatory. 18 Pa.C.S.A. § 1101(a). Judge Abraham's only discretion was whether to impose the life sentences consecutively or concurrently. In deciding to impose consecutive life sentences, Judge Abraham specifically stated that she believed the sentences imposed by Judge Ivins were "inappropriate," and that she would not diminish the severity of appellant's crimes by imposing concurrent sentences "for two murders by saying, well, two people are killed, you get two for the price of one." Those reasons, in conjunction with the remainder of the sentencing record, demonstrate no abuse of discretion by the court below. See *Fuller*, 579 A.2d at 887, citing *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988).[3]

Judgement of sentence affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting.

I must dissent from The Majority's affirmance of the trial court's action in permitting Assistant District Attorney

ent judge. Thus, those cases do not address the precise proposition for which they were cited.

However, we must remember that when individual sentencing judges are simply part of the same Court of Common Pleas, they should endeavor to mete out similar sentences to co-defendants when justice so dictates.

3. We comment further only to address the dissent of our esteemed colleague the Honorable Joseph Del Sole. Instantly, the testimony of District Attorney Charles F. Gallagher was offered *solely* to rehabilitate the credibility of Commonwealth witness Wayne Szczesniewski. Thus, we find that the lower court did not err when it permitted the Commonwealth to rehabilitate the credibility of its witness Wayne Szczesniewski.

The lower court succinctly characterized appellant's trial strategy, "In an attempt to discredit [Wayne] trial counsel sought to portray Wayne as the accomplice, not Stuart, and to create the inference that Wayne had falsely and corruptly placed blame on Stuart because the prosecutor's office in Philadelphia offered him preferential and exceedingly beneficial treatment and favors as incentives for him to do so." Trial Ct. Op., p. 25. Without a doubt, the Commonwealth should be permitted to rehabilitate a witness whose credibility has been assailed by the defense. *Commonwealth v. Griffin*, 511 Pa. 553, 567–570, 515 A.2d 865, 872–873 (1986); *Commonwealth v. Johnson*, 441 Pa.

237, 239–242, 272 A.2d 467, 469–470 (1971); *Commonwealth v. Nelson,* 274 Pa.Super. 526, 527–533, 418 A.2d 531, 532–533 (1980).

Under the circumstances *sub judice,* District Attorney Gallagher's testimony was plainly admissible to rebut defense counsel's suggestion that Wayne falsely accused appellant in exchange for preferential treatment by the Commonwealth. *Cf., Griffin,* 515 A.2d at 872–873 (proper to permit state trooper to testify that no deals or promises were made in exchange for witness' prior consonant statement). District Attorney Gallagher testified that appellant did not receive preferential treatment in exchange for his testimony. In response to defense counsel's assertion that Wayne was not prosecuted for the present murders in exchange for his testimony, it was proper to permit District Attorney Gallagher to testify as to the process he used to decide whether to indict Wayne. Further, we note that much of the testimony about which appellant now complains was elicited on cross-examination by defense counsel.

This is not a case, as the dissent asserts, where the Commonwealth impermissibly introduced evidence on direct examination which vouched for the credibility of its own witness. *Commonwealth v. Bricker,* 525 Pa. 362, 581 A.2d 147 (1990) is inapposite presently. Therein, the United States Attorney for the Western District of Pennsylvania, the District Attorney of Allegheny County and the Attorney General for the Commonwealth of Pennsylvania placed the imprimatur of their offices as support for the proposition that the Commonwealth witnesses were "telling the truth." Instantly, District Attorney Gallagher's testimony was offered only to rehabilitate Wayne's credibility and to rebut defense counsel's assertion of corrupt motives and bias. Moreover, the evidence in *Bricker, supra,* not only enhanced the otherwise un-impeached credibility of Commonwealth witnesses, but also tended to demonstrate that the accused had the same opportunity as the Commonwealth's witnesses to come forward and admit his involvement in criminal activity yet refused. Thus, the jury might have focused on the fact that Bricker did not take the stand in his own defense. Such was not the case presently.

In addition, *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986), as cited by the dissent, is also inapposite to the case before us. In *Seese, supra,* our Supreme Court ruled that expert evidence aimed at enhancing the credibility of a witness is inadmissible. However, District Attorney Gallagher did not testify as an expert on criminal law who was commenting on the veracity of a particular class of Commonwealth witnesses. Rather, Gallagher simply testified that Wayne did not receive favorable treatment in exchange for his testimony and that the decision whether to prosecute Wayne for the present murders was made independently of Wayne's decision to testify for the prosecution. This is not a case like *Seese, supra,* where expert testimony was offered to demonstrate the veracity of a particular class of persons. Instantly, the jury was simply presented with the information necessary to make a just assessment of the credibility of the Commonwealth's key witness.

Moreover, the lower court, in an abundance of caution, instructed the jury:

> Since Mr. Gallagher has testified that prosecutorial discretion is involved in making decisions as to who shall be charged and who

624

Charles F. Gallagher to testify concerning why Commonwealth witness Wayne Szczesniewski was not charged with any crime in relation to the murders. This testimony was permitted over objection of defense counsel, and counsel's Motion for a Mistrial was denied. Further, I believe that the trial judge's attempt at a cautionary instruction was inadequate to correct the prejudicial effect of the testimony.

This defendant, Stuart Szczesniewski, was charged with a double murder, and it was the prosecution's theory that the murders stemmed from the defendant's involvement in a large scale drug manufacturing and distribution scheme. Two other persons had been tried separately and were also convicted of these crimes. In order to connect the defendant with events on the night of the murders the Commonwealth called as a witness the defendant's brother, Wayne. He testified in detail concerning his involvement with Stuart in the drug business. It was the Commonwealth's theory that the murders were committed because the victims, who were drug sellers, had refused to pay for drugs that the defendants manufactured and supplied. Therefore, in order to maintain credibility for future drug deals, these victims were to be killed as an example to others who failed to pay for their supplies. While there was a substantial amount of testimony with respect to the drug operation, only the

shall not be charged, this involves his testimony as to those things that went on in his thinking, which may or may not be covered on cross-examination by Mr. Zucker.

That doesn't mean that you may agree with his decision or that you can't disagree with him. You may or may not, if you choose. The only purpose he is here to testify today is with regard to who was it that made the decision not to charge Wayne and what were the things that went into it, not that he was correct or incorrect in making that decision, that's a judgment for the jury to make.

In sum, we find that it was proper to permit District Attorney Gallagher to testify in order to rebut defense counsel's argument that Wayne Szczesniewski was given favorable treatment in exchange for his testimony. Further, the lower court's cautionary instruction and final jury instructions made it abundantly clear that it was the jury's exclusive function to assess Wayne's credibility, and therefore, reversible error was not committed. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976).

testimony of Wayne could link this defendant with events on the night of the murders.

During his direct examination, Wayne related that his brother directed him to meet one of the other persons involved who directed him to drive the "hit man" to the place were the murders took place. Later that evening, Wayne testified that he retrieved this person and they went back to the drug plant. On cross-examination, Wayne admitted that he was fairly sure that the murders were going to be committed the evening he drove Herbert Leitner, who was earlier convicted for shooting the victims, to the Woodbine Inn, and further admitted to involvement in the crime. (Record pp 562–563) Also, during cross-examination, it was established that Wayne was never charged in these homicides or other potential crimes in Pennsylvania. In addition it was shown that an Assistant District Attorney from Philadelphia accompanied Wayne to a court proceeding in New Jersey where he received a probationary sentence for a pending, drug-related crime. Wayne testified that no agreement existed between him and any prosecuting authority to exchange leniency for his testimony in the murder cases.

In order to rebut the obvious inference that such an agreement had been reached and to rehabilitate the witness' credibility, the prosecution called Assistant District Attorney Charles F. Gallagher to the stand. Mr. Gallagher testified that no deal was reached with Wayne in exchange for his testimony. However, he was asked over objection why Wayne was not charged in this matter and testified:

A: Based on my review of evidence that was produced to the grand jury, that's all the statements, not only by the Szczesniewski brothers but everyone else, it was clear that Wayne was just an employee of this so-called chemical plant which was, in fact, a drug factory. It was clear he was not involved in—

(R pp. 726–727).

A: No, no deals were ever made with Wayne Szczesniewski for his testimony. I mean deals, there were

never any agreements made, a quid pro quo, in other words, that we would go to bat for him or that we would offer him anything for his testimony.

It was clear from the beginning when I met Wayne Szczesniewski that all he wanted to do was come forward and get this incident behind him. And there were never any deals offered to him for his testimony, nor was there any influence made by our office ... upon the Camden County Prosecutor's Office as far as the resolution of Wayne's cases over in Camden County ...

(R. pp. 730–731).

This testimony by the Assistant District Attorney goes far beyond rehabilitating the witness. It is in effect a statement by the Government that the witness' testimony is true. By referring to his review of all the investigation materials at his disposal, Mr. Gallagher was placing his imprimatur on the version of events that were related by Wayne. This type of evidence has been ruled inadmissible by our courts. In *Commonwealth v. Bricker,* 525 Pa. 362, 581 A.2d 147, (1990), the Supreme Court of Pennsylvania condemned the practice of introducing evidence that vouches for the credibility of the Commonwealth's own witnesses. It further held that in so bolstering credibility, the Commonwealth violated the defendant's right to a fair trial.

In *Commonwealth v. Seese,* 512 Pa. 439, 443–44, 517 A.2d 920 (1986), the court stated:

It is an encroachment upon the province of the jury to permit expert testimony on the issue of a witness' credibility. [citation omitted] Indeed, to permit expert testimony for the purpose of determining the credibility of a witness "would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment. [citation omitted]

*Seese* also postulated that if expert testimony as to the veracity of distinct classes of individuals were admitted, (in this case persons involved in criminal activity), one could

imagine experts testifying as to the veracity of the elderly, or of various ethnic groups, or persons employed in various trades or professions, etc. Such testimony, would encourage jurors to shift their focus from determining the credibility of a *particular* witness who testified, and instead defer to the expert's assessment of the veracity of the class of people to which the witness belonged. *Id.*, 512 Pa. at 444, 517 A.2d 920.

Such is the danger here, particularly when Mr. Gallagher, an Assistant District Attorney, and therefore an "expert" in prosecuting criminal suspects, gives his opinion that Wayne was being truthful in order to "get this incident behind him."

The trial judge's cautionary instruction was inadequate to remedy this error. That instruction advised the jury that they were not to be concerned with whether they agreed or disagreed with the prosecution's decision not to charge Wayne with these crimes. She further stated that this witness was presented to establish that no agreement was reached with Wayne and the reason for the decision not to prosecute. Nowhere in this instruction was the jury cautioned that Mr. Gallagher's opinion about the truth of Wayne's statement or Mr. Gallagher's opinion of Wayne's involvement were to be disregarded, since they are not to be considered by the jury. By this statement I do not mean to imply that a cautionary instruction could have corrected the prejudicial effect of this testimony. I merely point out that the instruction given in this case could never have done so. Therefore, I dissent and would grant a new trial.