## Commonwealth v. Ramirez

202

*Janet M. Catina,* for Commonwealth.
*Bradley Warren Weidenbaum,* for defendant.

WORTHINGTON, *J.,* September 18, 2006—Alex Miguel Ramirez (defendant) was arrested on December 18, 2005 and charged with one count of attempted criminal homicide, a felony, in violation of 18 Pa.C.S. §901(a), 18 Pa.C.S. 2501; one count of aggravated assault with a deadly weapon, a felony, in violation of 18 Pa.C.S. §2702(a)(1) and (4); one count of possessing instruments of crime, a misdemeanor of the first degree, in violation of 18 Pa.C.S. §907(a); one count of unsworn falsifications to authorities, a misdemeanor of the second degree, in violation of 18 Pa.C.S. §4904(a)(1); and one count of tampering with or fabricating physical evidence, a misdemeanor of the second degree, in violation of 18 Pa.C.S.

§4910(1). On January 13, 2006 a preliminary hearing was held before Magisterial District Justice Anthony D. Fluegel. At the conclusion of testimony, District Justice Fluegel bound over the charges. The charges were included in a Criminal Information filed by the Commonwealth on February 2, 2006.

On June 5, 2006, defendant filed a timely omnibus pretrial motion. Included in the omnibus motion is (1) a motion to suppress statements that defendant made to police prior to his formal arrest; (2) a motion to suppress post-arrest statements that defendant made to police; (3) and a motion for a court appointed expert witness and private detective.

A hearing was held on June 13, 2006, at which time counsel made oral argument. Defendant filed a brief in support of his motions on July 17, 2006, and the Commonwealth filed a brief in opposition thereto on August 28, 2006. Defendant's omnibus pretrial motion is now before us for disposition.

We begin our analysis with the testimony presented at the omnibus hearing on June 13, 2006. The relevant facts are as follows: On December 18, 2005, Detective Richard W. Luthcke, Sergeant Tim McCarty, and Detective Sergeant Harry Lewis of the Pocono Regional Police Department arrived at the home of defendant on Saw Mill Road in A Pocono Country Place at approximately 5:30 a.m. to interview him as a "potential witness" to a shooting that occurred earlier that evening. N.T. 06/13/06, p. 8. The officers were in plain clothes and were armed. *Id.* at 21. The officers identified themselves at the door of defendant's residence and defendant's brother admitted them and led them upstairs to

defendant, whom they found awake and sitting on a couch. *Id.* at 10. Because there were children present upstairs, Detective Luthcke asked defendant whether they could speak somewhere else and defendant led the officers downstairs to a kitchen table. *Id.* Detective Luthcke then sat at the table with defendant and questioned him about the shooting but did not *Mirandize* him. *Id.* at 11. Detective Luthcke testified that Sergeants Lewis and McCarty were away from the table during the questioning of defendant. *Id.* at 13. Defendant gave a version of the events to the police and then, upon request by Detective Luthcke, provided a written statement which read:

"I got a phone call from my friend Matthew Hickman, he told me to hurry up and come over his house because somebody was breaking in so he hung up and I came over with Emily and Melissa. When I came over I saw somebody laying outside on the [indiscernible] in the driveway." Commonwealth exhibit no. 1.

When asked why he failed to *Mirandize* defendant, Detective Luthcke testified that he did not consider the questioning custodial in nature and had no reason to believe at the time that defendant was the shooter. N.T. 06/13/06, p. 12. According to Detective Luthcke, defendant showed no hesitancy in speaking to him, nor did he at any time indicate that he did not want to speak to the police or that he wanted counsel. *Id.* at 12-13. Detective Luthcke did not provide defendant with a "notification of non-arrest form," which, according to the testimony of Detective Luthcke, officers of the Pocono Regional Police Department sometimes use so that an interviewee

"knows they are not under arrest" at the time of questioning. *Id.* at 24.

While Detective Luthcke interviewed defendant, Sergeant Lewis received a phone call and on the basis of its contents relayed to Detective Luthcke that defendant was the shooter and should be taken into custody. *Id.* at 13-14. Detective Luthcke and Sergeant McCarty then took defendant outside and arrested him for "making false statements," verbally *Mirandize* him, and transported him to police headquarters. *Id.* at 16; defense exhibit no. 1.

After his removal to police headquarters, Detective Luthcke again *Mirandize* defendant by reading from a sheet of paper containing the *Miranda* warnings and defendant signed the waiver portion of the sheet. *Id.* at 17; Commonwealth exhibit no. 2. According to Detective Luthcke, defendant did not appear confused regarding his *Miranda* rights, did not indicate that he did not want to answer questions or make further statements, and did not request the presence of an attorney. *Id.* at 17-18. After defendant signed the *Miranda* waiver, Detective Luthcke and Detective John Bohrman took defendant into an interview room and conducted a taped interview. *Id.* at 19. Detective Luthcke testified that during the interview defendant never indicated that he did not wish to be questioned and never requested that his lawyer be present. *Id.* at 20.

At no time during the hearing on this matter did defendant present evidence showing that he was confused regarding his *Miranda* rights or his waiver of those rights or that he invoked those rights at any time during questioning, either before or after his formal arrest.

## MOTION TO SUPPRESS
## PRE-ARREST STATEMENTS

Defendant argues that officers of the Pocono Regional Police performed a custodial interrogation of defendant at his home at approximately 5:30 a.m. on December 18, 2006 without informing him of his *Miranda* rights, thereby violating his right against self-incrimination as preserved by the United States Constitution and Pennsylvania law. We disagree. We hold that the officer's questioning of defendant did not rise to the level of a custodial interrogation and therefore did not invoke defendant's right against self-incrimination.

It is well-settled that a person in custody must, prior to interrogation, be informed of the procedural safeguards stated in *Miranda,* including the right to remain silent and the right to counsel. *Miranda v. Arizona,* 384 U.S. 436 (1966); *Commonwealth v. Thompson,* 778 A.2d 1215 (Pa. Super. 2001). Absent these warnings, any statements made are subject to suppression. The warnings required by *Miranda* are only necessary, however, when the defendant is subject to custodial interrogation. *Commonwealth v. Paxton,* 821 A.2d 594, 598 (Pa. Super. 2003), citing *Commonwealth v. Fisher,* 564 Pa. 505, 769 A.2d 1116 (2001).

Whether a person is in custody for *Miranda* purposes "depends on whether the person is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson,* 556 Pa. 216, 238-39, 727 A.2d 1089, 1100 (1999). The Superior Court clarified

this standard in holding that detentions become custodial "when under the totality of the circumstances the conditions and/or duration of the detention become so coercive as to become the functional equivalent of arrest." *Commonwealth v. Dupre,* 866 A.2d 1089, 1106 (Pa. Super. 2005).

The Superior Court has held that "the basis for detention; the location; whether the suspect was transported against his will; how far, and why; whether restraints were used; the show, threat, or use of force; and the methods of investigation used to confirm or dispel suspicions" are "among the factors the court utilizes in determining, under the totality of the circumstances, whether police detention became so coercive as to constitute the functional equivalent of arrest . . . ." A custodial interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Commonwealth v. DeJesus,* 567 Pa. 415, 428, 787 A.2d 394, 402 (2001), citing *Rhode Island v. Innis,* 446 U.S. 291, 300-301, 100 S.Ct. 1682 (1980). It is commonly held that this definition "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.*

Because the officers responsible for initially questioning defendant concede that they did not *Mirandize* him before questioning, defendant's arguments hinge on whether he was in custody during this period. Defendant argues that the "totality of circumstances" support the conclusion that defendant reasonably believed he was in custody when police questioned him at his residence.

Defendant argues that the early hour of questioning (approximately 5:30 a.m.), the fact that there were three armed officers present (possibly with side-arms visible to defendant), the duration of the questioning (over 30 minutes), and the failure of the officers to inform defendant that he could decline to answer the questions or leave the house demonstrate that defendant was in police custody when the officers initially questioned him.

Defendant primarily relies on *Commonwealth v. Zogby* in support of his position. 455 Pa. Super. 621, 689 A.2d 280 (1997). In *Zogby,* the Superior Court held that when a state trooper entered a suspect's bedroom, roused him from a sound sleep, "advised" him to dress and go outside for questioning, and did not inform him that he could refuse to answer the trooper's questions, it gave rise to a custodial interrogation requiring police to advise the suspect of his *Miranda* rights. In that case, state police identified a suspect in an early morning hit and run accident and went to his residence to question him. As the Superior Court noted, "[the trooper] attempted to arouse him but encountered much difficulty in doing so. [The trooper] peeled off [the suspect's] bed cover and then began shaking his leg." *Zogby,* at 622, 689 A.2d at 281.

Defendant also attempts to distinguish this case from *Commonwealth v. Dupre,* in which the Superior Court held that the questioning of a person at her residence by officers in plain clothes did not rise to the level of a custodial interrogation. 866 A.2d 1089, 1106 (Pa. Super. 2005). In this case, a female officer asked a woman believed to be involved in the death of her newborn whether she could speak to her alone in another room,

to which the woman agreed. The officer questioned the woman for approximately 20 minutes until she revealed the circumstances of her newborn's birth and suggested the death might have been an accident. Having become a suspect, the officer *Mirandized* her before continuing questioning. *Id.* at 1105.

The present case closely resembles the facts of *Dupre*. In this case, three police officers in plain clothes arrived at defendant's home, identified themselves and requested to speak with defendant. Defendant agreed and led the officers to his kitchen. Detective Luthcke then proceeded to question defendant alone while the other officers stood off to the side. Like the defendant in *Dupre,* defendant displayed no unwillingness to answer questions and did not request an attorney. He also willingly made a written statement. Like the defendant in *Dupre,* defendant in this case did not become a suspect until after the questioning had commenced, at which time Detective Luthcke, like the officer in *Dupre,* stopped the questioning and *Mirandized* defendant.

It is also significant that none of the factors outlined in *Dupre* for determining whether a detention is custodial support defendant's contention in this case. The purpose of the original detention was not to establish probable cause for an arrest, but to question defendant as a possible witness to the shootings; defendant was initially questioned at home, not at a police station; defendant was not transported against his will; defendant was not restrained; the officers did not threaten or use force, and did not display force other than by carrying holstered side-arms that may or may not have been visible to defendant; and the methods used to interrogate defendant were straightfor-

ward and defendant at no time objected to or showed confusion regarding the line of questioning.

The differences between this case and *Zogby* are also significant. In *Zogby,* the officer had determined that the car involved in the hit and run belonged to the defendant and viewed the defendant as a suspect when he arrived at his home to interrogate him.

He entered the defendant's bedroom, pulled the covers off of him, shook him awake, and urged him to get dressed and come outside for questioning. The officer testified that had the defendant refused to accompany him, he would have continued to press him until he complied. *Zogby,* at 625, 689 A.2d at 283. In this case, there was no physical contact and defendant readily agreed to sit for questioning. Also, Detective Lutchke testified that defendant was not a suspect during the questioning at his residence.

As defendant emphasizes, here officers questioned defendant at 5:30 a.m. and may have had visible side-arms. These factors, however, are insufficient to create a custodial investigation where defendant was not a suspect and knowingly and without hesitation sat for police questioning in his own home. Furthermore, none of the factors that the Superior Court set forward in *Dupre* support defendant's contention. We therefore deny defendant's motion to suppress his pre-arrest statements to police.

## MOTION TO SUPPRESS
## POST-ARREST STATEMENTS

Defendant next argues that post-arrest statements made to the Pocono Mountain Regional Police should be sup-

pressed as statements made incident to an unlawful arrest. Because we find that defendant's arrest was lawful, we deny defendant's motion to suppress his post-arrest statements.

Defendant asserts that under Pennsylvania law, statements made incident to an unlawful arrest must be suppressed unless the Commonwealth can demonstrate that the taint of illegal arrest was purged by an intervening act or temporal cessation of interrogation. See *Commonwealth v. Farley,* 468 Pa. 487, 494, 364 A.2d 299, 302 (1976). However, absent an unlawful arrest, defendant's post-arrest statements are admissible assuming that defendant was properly *Mirandized* and the statements were otherwise legally obtained. See *e.g., Commonwealth v. Young,* 2006 WL 2063075 (Pa. Super. 2006). A legal arrest requires probable cause on the part of police, which is determined by considering the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213 (1983). Under the totality of the circumstances, a police officer must make a practical common sense decision whether, given all of the circumstances known to him at that time, there is a fair probability that a crime was committed and that the suspect committed the crime. *Commonwealth v. Taylor,* 850 A.2d 684, 687 (Pa. Super. 2004).

In this case, defendant argues that his arrest was unlawful because the police found probable cause on the basis of written statements that he made under custodial interrogation before he was advised of his constitutional rights. Defendant is correct that the inconsistency of these statements with other evidence created a basis of probable cause for which police arrested defendant. Defense

exhibit no. 1, p. 10. However, because we find that the initial non-custodial questioning of defendant does not implicate *Miranda,* the pre-arrest statements are admissible and legally formed the basis of probable cause for arresting defendant. Furthermore, defendant concedes that he was formally *Mirandized* before his questioning at police headquarters and does not claim that he was coerced into waiving his *Miranda* rights or in making post-arrest statements to police. Because defendant was not in custody at the time of his original statements to police and not entitled to *Miranda* warnings, we find that police legally considered defendant's statements when determining whether probable cause existed for his arrest.

We therefore deny defendant's motion to suppress his post-arrest statements to police.

## MOTION FOR APPOINTMENT OF EXPERT WITNESS AND PRIVATE DETECTIVE

Defendant moves for the appointment of a private investigator or that we make funds available so that he may retain one, and for the appointment of a gunshot residue expert. We deny this motion.

Our Superior Court has "recognized the right of indigent defendants to have access to the same resources as non-indigent defendants in criminal proceedings." *Commonwealth v. Curnutte,* 871 A.2d 839, 842 (Pa. Super. 2005). Yet it has also recognized that "there is no constitutional mandate, either federal or state, that experts be appointed at public expense to assist in the preparation of a defense whenever requested by one accused of

crime." *Commonwealth v. Gelormo,* 327 Pa. Super. 219, 229, 475 A.2d 765, 770 (1984).

In this case, defendant is not indigent, as he has retained and paid private counsel. As we noted in our June 22 order denying defendant's petition to proceed in forma pauperis, defendant may make application to the public defender office upon withdrawal of private counsel in this matter. Otherwise, defendant is not entitled to the appointment of experts or a private investigator.

Accordingly, we enter the following:

## ORDER

And now, September 18, 2006, in consideration of defendant's omnibus pretrial motion, we enter the following order:

(1) Defendant's motion to suppress statements is denied.

(2) Defendant's motion for appointment or funding of gunshot residue expert and private detective is denied.