J-A25016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN J. SYGA | |
| Appellant | No. 2477 EDA 2014 |

Appeal from the Judgment of Sentence April 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008932-2009

BEFORE:  DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED NOVEMBER 16, 2015**

Appellant, John J. Syga, appeals from the April 11, 2014 aggregate judgment of sentence of 10 to 20 years' imprisonment, imposed after he was found guilty of one count each of simple assault, aggravated assault, and recklessly endangering another person (REAP).[1]  After careful review, we affirm.

The trial court summarized the relevant factual and procedural history of this case as follows.

> On May 8, 2009, at around 3:00 a.m., Larry Jones heard someone screaming for help as he exited the back door of his apartment on the 7100 block of Oxford Avenue, Philadelphia.  Mr. Jones determined

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2701(a), 2702(a), and 2705, respectively.

that the screaming was coming from the rear parking lot of an apartment complex at 7110 Oxford Avenue, where he saw a young woman, later identified as Jeanette Mercado, lying on the black concrete surface. As Ms. Mercado lay defenseless on the ground, [Appellant] was observed kicking her in the head and face. Mr. Jones also saw another man, later identified as Eric Garcia, with [Appellant]. However, he did not see Garcia strike or kick Ms. Mercado at that time. Instead, Mr. Jones saw Garcia pulling items from Ms. Mercado's bag as he searched it.

After witnessing this incident, Mr. Jones approached off-duty Police Officers Edwin Correa and Ralph Harris (now Sergeant) who were standing in a parking lot outside of the Princeton Tavern at 7100 Rising Sun Avenue. He advised the officers of his observation and Officers Correa and Harris walked from 7100 Rising Sun Avenue to the parking lot at 7110 Oxford Avenue. They arrived on the scene within fifteen seconds. Officers Correa and Harris observed both [Appellant] and Garcia kicking Ms. Mercado in the head and upper torso while she was lying on the ground. [Appellant] was on one side of Ms. Mercado's body and Garcia was on the other side. [Appellant] and Garcia continued to kick Ms. Mercado as she lay motionless, moaning and groaning from the assault. As Officers Correa and Harris moved closer, they saw [Appellant] and Garcia pick up Ms. Mercado and attempt to place her in the back seat of a vehicle, later determined to belong to [Appellant]. The men were folding Ms. Mercado's body as if it were a lawn chair, and placing her inside the vehicle.

Officers Correa and Harris identified themselves as police officers, and Officer Correa ordered [Appellant] and Garcia to stop what they were doing. Both men turned and stated that they were helping a friend. When Officers Correa and Harris approached the vehicle, they heard Ms. Mercado gurgling loudly and observed that she was having difficulty breathing. Officer Harris asked her

questions, but received no response. Ms. Mercado was unconscious, and bleeding from the nose and mouth. There was blood on her face and body, and on the floor of the vehicle. Officers Correa and Harris tried to ascertain her name, but they could not find any identification documents among the various items spread out on the ground, about two to four feet away from the vehicle. Officer Correa drew his weapon and ordered the men to stop moving and to lie down in a prone position on the ground. The men complied.

Afterwards, Officer Correa called 911 and requested medical assistance. At around 3:30 a.m., Police Officers Robert Livewell and Kenneth Smith responded to a radio call of a person screaming at that location. Within minutes, Officers Livewell and Smith arrived on the scene and exited their patrol vehicle. They encountered off-duty Officers Correa and Harris, who requested that they arrest [Appellant] and Garcia.

Officers Correa and Harris both pointed to a gold Dodge Stratus and stated: "She is real bad. She is real bad." When Officer Smith approached the vehicle, he saw Ms. Mercado's twisted and contorted body in the back seat. Ms. Mercado was semi-conscious, and she was barely breathing. She suffered head trauma, including multiple cuts on her head and a caved-in skull. There was blood on her face and in her hair. Officer Smith also saw the following items spread out on the ground: one black sneaker, one gold necklace, and a pair of sunglasses. Officers Livewell and Smith then arrested [Appellant] and Garcia. Officer Smith also prepared the incident report and the arrest memorandum. Ms. Mercado was simply referred to as "Jane Doe" until police later discovered her name.

Ms. Mercado was transported by ambulance to the emergency room at Albert Einstein Medical Center, where she arrived unresponsive, sedated and paralyzed. She was placed on a ventilator after being diagnosed with respiratory failure. A catheter

was inserted. Ms. Mercado also suffered a small subarachnoid hemorrhage in her brain. She had lacerations on the left side and right side of her skull and bruises behind her left ear. After a drug screen, Ms. Mercado tested positive for cocaine, marijuana and opiates and negative for alcohol. Ms. Mercado was later transferred to the surgical intensive care unit for further treatment. On May 18, 2009, Ms. Mercado underwent two surgeries: a gastrostomy to insert a feeding tube and a tracheostomy to insert a breathing tube. On May 22, 2009, Ms. Mercado opened her eyes for the first time, but she was unable to follow commands. On May 23, 2009, Ms. Mercado was transferred from the surgical intensive care unit to the step-down unit.

On June 4, 2009, Ms. Mercado was discharged to the Drucker Brain Injury Center at Moss Rehabilitation in Elkins Park, Pennsylvania. At that time, she was diagnosed with bleeding in the brain and traumatic brain injury. Ms. Mercado was in a minimally conscious state and she did not demonstrate oral movements or attempt to communicate. During her stay, Ms. Mercado underwent physical therapy five days each week in order to learn how to walk, talk and sit upright on her own.

Ms. Mercado's catheter was removed on June 4, 2009. Her breathing tube was removed on June 11, 2009, and her feeding tube was removed on July 2, 2009. As of June 11, 2009, she was still blind. By July 13, 2009, Ms. Mercado had regained her vision, albeit impaired. She had missing teeth and required assistance with her oral care. On July 17, 2009, Ms. Mercado was discharged from the rehabilitation center to her family's care. Upon discharge, she was instructed not to shower, dress, or use the bathroom without assistance. She was further instructed to complete a home exercise plan with assistance and to take five medications daily. At that time, she was unable to drive, ride a bike, walk a dog, or engage in any activity requiring a high level of balance. At trial, Ms. Mercado stated that she did not remember

- 4 -

the incident, but that she knew she had been in a coma for eight [days]. She further stated that she had difficulty learning Spanish and English again.

[Appellant] testified at trial and stated that he and Garcia had been out drinking that evening, and that afterwards he drove Garcia to the Kensington section of Philadelphia to pick up a prostitute. He went on to say that after Garcia picked up Ms. Mercado, [Appellant] drove to Garcia's apartment complex at 7210 Oxford Avenue, which is next to and shares a parking lot with the apartment complex at 7110 Oxford Avenue. While en route to the apartment, Garcia called his girlfriend on a cell phone. [Appellant] stated that Garcia became angry with Ms. Mercado because she began to talk loudly while he was on the phone with his girlfriend. [Appellant] further stated that Garcia and Ms. Mercado were in a shouting match for about five minutes. When they arrived at the rear parking lot of his apartment complex, Garcia and Ms. Mercado exited the vehicle. [Appellant] vigorously denied repeatedly kicking Ms. Mercado in her head and upper torso. He claimed that Garcia was the only one who assaulted her in that manner. [Appellant] admitted to slapping Ms. Mercado in the face several times, but claimed that he did so only to calm her down.

Trial Court Opinion, 12/31/14, 2-5 (internal citations omitted).

On July 23, 2009, the Commonwealth filed an information charging Appellant with the above-mentioned offenses, plus one count each of criminal conspiracy, unlawful restraint, and false imprisonment.[2] Appellant proceeded to a jury trial, at the conclusion of which on January 16, 2014, the jury found Appellant guilty of one count each of simple assault,

_____

[2] 18 Pa.C.S.A. §§ 903(a)(1), 2902(a)(1), and 2903(a), respectively.

aggravated assault, and REAP. The jury found Appellant not guilty of criminal conspiracy, and the unlawful restraint and false imprisonment charges were *nolle prossed*. On March 13, 2014, Appellant filed a motion for extraordinary relief, seeking a new trial on the grounds that the Commonwealth committed a ***Brady***[3] violation. The trial court denied said motion on March 21, 2014. On April 11, 2014, the trial court imposed an aggregate sentence of 10 to 20 years' imprisonment.[4] On April 18 and April 21, 2014, Appellant filed timely post-sentence motions. On April 30, 2014, Appellant filed an untimely supplemental post-sentence motion. On August 19, 2014, the trial court entered an order denying Appellant's post-sentence motions by operation of law. ***See generally*** Pa.R.Crim.P. 720(B)(3)(c). On August 20, 2014, Appellant filed a timely notice of appeal.[5]

On appeal, Appellant raises the following five issues for our review.

> I. Whether the trial court abused its discretion in denying the jury's request to view the prior inconsistent statement of Officer Correa, concerning the incident, which was a lynchpin of Appellant's defense?

---

[3] ***Brady v. Maryland***, 373 U.S. 83 (1963).

[4] Specifically, the trial court sentenced Appellant to 10 to 20 years' incarceration for aggravated assault, and no further penalty on the remaining charges.

[5] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

II. Whether the trial court erred in denying Appellant's [m]otion for [e]xtraordinary [r]elief based on the Commonwealth's prosecutorial misconduct by failing to provide critical **Brady** material pretrial, in the nature of Appellant's Philadelphia arrest record, which could have been used to impeach [Officer] Harris's testimony that he saw blood on Appellant's clothing and took pictures of such, where the arrest record would have revealed that no such pictures were taken by Officer Harris?

III. Whether this Court should grant review of the discretionary aspect of sentencing because [A]ppellant raises a substantial question that imposition of the statutory maximum sentence is not appropriate under the Sentencing Code?

   a. Whether the trial court abused its discretion in sentencing Appellant to the maximum authorized by law of not less than ten (10) nor more than twenty (20) years in a [s]tate [c]orrectional [i]nstitution, which was more than triple the co-defendant's sentence, not supported by sufficient reasons stated on the record, and failed to take into account [A]ppellant's personal characteristics?

IV. Whether there was insufficient evidence to support Appellant's conviction for [a]ggravated [a]ssault committing serious bodily injury, in that the Commonwealth failed to prove that Appellant caused serious bodily injury to the victim, or was guilty as an accomplice?

V. Whether the weight of the evidence fails to support the jury's finding that Appellant is guilty of [a]ggravated [a]ssault committing serious bodily injury, in that the Commonwealth failed to prove that Appellant caused serious bodily injury to the victim, or was guilty as an accomplice?

Appellant's Brief at 6-7.

We address Appellant's fourth issue first, as the remedy for lack of sufficient evidence is a discharge order, rather than a new trial. ***Commonwealth v. Stokes***, 38 A.3d 846, 853 (Pa. Super. 2011). Our standard of review regarding the sufficiency of the Commonwealth's evidence is well settled.

"In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." ***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, ***Patterson v. Pennsylvania***, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" ***Id.*** (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the

- 8 -

evidence." ***Id.*** (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied,* ***Diamond v. Pennsylvania***, 135 S. Ct. 145 (2014).

Instantly, Appellant only challenges the sufficiency of the evidence for his aggravated assault conviction. Appellant's Brief at 40. The statute for aggravated assault provides as follows.

**§ 2702. Aggravated assault**

**(a) Offense defined.--**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life …[.]

18 Pa.C.S.A. § 2702(a)(1). The Crimes Code defines serious bodily injury as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Appellant avers that the Commonwealth presented insufficient evidence to prove that it was he who caused serious bodily injury to Mercado. Appellant's Brief at 41.

At trial, the Commonwealth presented several different eyewitnesses to the assault on Mercado. Officer Correa testified that when he arrived on

the scene he observed "two males standing and one body on the floor." N.T., 1/14/14, at 75. The two men were kicking Mercado, specifically "using [their] right [feet] moving forward and down in a forceful manner." *Id.* at 75-76. Officer Correa identified Appellant as one of the two men he saw kicking her. *Id.* Officer Harris testified that he also observed two men kicking Mercado as she was lying on the ground. *Id.* at 43. Officer Harris further identified Appellant in court as one of those men. *Id.* at 38, 42. In addition, Jones testified that when he first heard someone screaming for help and arrived on the scene, he observed Mercado behind a car with her head protruding from behind the car. *Id.* at 6. Jones testified that someone was stomping on her body as she lay there. *Id.* at 7. Jones also identified that man as Appellant. *Id.* at 6.

Our Supreme Court has held that the testimony of one eyewitness to an element of the offense is sufficient evidence of that element. *Commonwealth v. Brown*, 52 A.3d 1139, 1165 (Pa. 2012); *Commonwealth v. Duncan*, 373 A.2d 1051, 1054 (Pa. 1977). Here, the Commonwealth presented three eyewitnesses that each identified Appellant as the perpetrator who repeatedly and forcefully kicked Mercado as she laid on the ground. *See generally* N.T., 1/14/14, at 7, 42, 75-76. Based on

these considerations, Appellant is not entitled to relief on this issue.[6] *See Patterson*, *supra*; *Diamond*, *supra*.

We next address Appellant's first issue, where he avers that the trial court erred when it refused the jury's request to review a prior written statement by Officer Correa. Appellant's Brief at 26. The Commonwealth counters that the trial court did not err, as allowing the jury to have only this statement with it during deliberations would have placed undue emphasis on Officer Correa's written statement. Commonwealth's Brief at 14. We note that we review a trial court's decision pertaining to a jury's request to have exhibits during deliberations for an abuse of discretion. *Commonwealth v. Parker*, 104 A.3d 17, 25 (Pa. Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 296 (Pa. 2015).

Pennsylvania Rule of Criminal Procedure 646 governs this issue generally, and provides in relevant part as follows.

> **Rule 646. Material Permitted in Possession of the Jury**
>
> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> (B) The trial judge may permit the members of the jury to have for use during deliberations written

---

[6] Because we have concluded that the Commonwealth presented sufficient evidence that Appellant was the principal perpetrator, we need not address his argument that the Commonwealth did not present sufficient evidence to convict him on an accomplice theory of liability.

copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed.

(1) If the judge permits the jury to have written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed, the judge shall provide that portion of the charge in its entirety.

(2) The judge shall instruct the jury about the use of the written charge. At a minimum, the judge shall instruct the jurors that

(a) the entire charge, written and oral, shall be given equal weight; and

(b) the jury may submit questions regarding any portion of the charge.

(C) During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information or indictment; and

(4) except as provided in paragraph (B), written jury instructions.

(D) The jurors shall be permitted to have their notes for use during deliberations.

Pa.R.Crim.P. 646. In addition, this Court has held that a trial court may refuse to permit the jury to have one exhibit in its possession during

deliberations if it will cause the jury to place undue emphasis on that singular piece of evidence above others. ***Commonwealth v. Taylor***, 596 A.2d 222, 224 (Pa. Super. 1991), *appeal denied*, 602 A.2d 859 (Pa. 1992).

In ***Taylor***, the defendant was convicted of various drug offenses and the jury requested that a tape recorded conversation between Taylor and a confidential informant be sent back so it could listen to it again. ***Id.*** The trial court refused and we concluded that it was not an abuse of discretion. Specifically, we agreed with the trial court that "the quality of the reproduction was poor, and that he did not wish the jury to emphasize that piece of evidence over the other evidence presented." ***Id.***; ***see also, e.g.***, ***Commonwealth v. Hall***, 407 A.2d 1335, 1337 (Pa. Super. 1979) (stating that the trial court did not abuse its discretion in deciding that the "re-reading of the victim's testimony was unnecessary and potentially prejudicial to appellant because it might seemingly place undue emphasis on the victim's testimony[]").

In the case *sub judice*, the trial court concluded that the jury's request should be denied based on the following reasoning.

> [The trial] court deemed it inappropriate to send out [Officer Correa's statement] because it would have unnecessarily highlighted that statement as no other statements were provided to the jury during its deliberations. [The trial] court denied the jury's request to prevent undue emphasis being placed on that exhibit at the expense of other evidence presented at trial. … During this trial the jury had the opportunity to hear Officer Correa's full testimony and to view his demeanor as he testified. Only a

portion of Officer Correa's testimony involved the content of his statement. Instead of sending that statement out to the jury, [the trial] court instructed the jurors to rely upon their own recollections as to what Office Correa said and the circumstances under which he said it during their deliberations.

Trial Court Opinion, 12/31/14, at 8-9.

After careful review, we conclude Appellant is not entitled to relief on this issue. As we explained above, our cases state that undue emphasis is a sufficient reason for the trial court to exercise its discretion to not send an exhibit back to the jury. *Taylor*, *supra*; *Hall*, *supra*. The jurors' original request was for "[a]ll police reports, incident reports … arrest reports and statements." N.T., 1/16/14, at 57. The trial court concluded that the only exhibit that was moved into evidence that did not contain any inadmissible hearsay was Officer Correa's statement. *Id.* at 62. The trial court did not wish to overemphasize this one statement and de-emphasize other pieces of evidence. The trial court was well within its discretion to do so. *See Taylor*, *supra*; *Hall*, *supra*. Based on these considerations, we conclude the trial court did not abuse its discretion in denying the jury's request. *See Parker*, *supra*.

In his second issue, Appellant avers that the trial court erred when it denied his motion for extraordinary relief, alleging that the Commonwealth committed a *Brady* violation when it did not disclose the record of Appellant's arrest which allegedly contained impeachment information regarding Officer Harris's testimony, specifically photographs that Officer

- 14 -

Harris allegedly took of Appellant. Appellant's Brief at 31. The Commonwealth counters that it did not commit a *Brady* violation because the hypothetical evidence in question does not exist, and if it did, it was inculpatory. Commonwealth's Brief at 18.

"Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (citation omitted). "Thus, to establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (citation omitted).

> Pursuant to *Brady* and its progeny, the prosecutor has a duty to learn of all evidence that is favorable to the accused which is known by others acting on the government's behalf in the case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Pursuant to *Kyles*, "the prosecutor's *Brady* obligation clearly extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution." *Commonwealth v. Burke*, 781 A.2d 1136, 1142 ([Pa.] 2001). Moreover, there is no *Brady* violation when the defense has equal access to the allegedly withheld evidence. *See Commonwealth v. Spotz*, 896 A.2d 1191, 1248 ([Pa.] 2006) ("It is well established that no *Brady* violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such

evidence with reasonable diligence[]" (internal citation omitted)).

*Id.* (parallel citations omitted).

After careful review, we conclude that Appellant is not entitled to relief. Appellant has not shown that the disputed photographs ever existed, such that they were withheld or suppressed by the Commonwealth. The Commonwealth informed the trial court that neither its office nor the Philadelphia Police Department were in possession of any photographs, other than Appellant's arrest photograph. N.T., 4/11/14, at 25-26. Nor were there any evidence logs or other similar documents showing that such photographs ever existed and then were lost. *Id.* We further note that Appellant himself testified at trial that the police never took any photographs of him at all, other than his arrest photograph. N.T., 1/15/14, at 129. Succinctly, Appellant has not provided any indication that these photographs exist, much less that the Commonwealth withheld or suppressed them. As a result, we conclude the trial court did not err when it denied Appellant's motion for extraordinary relief.

In his fifth issue, Appellant argues that the jury's verdict was against the weight of the evidence. We begin by noting our standard of review regarding weight of the evidence issues. "A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted). An argument that the jury's verdict was against the

weight of the evidence concedes that the evidence was sufficient to sustain the convictions. *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, *Lyons v. Pennsylvania*, 134 S. Ct. 1792 (2014). Our Supreme Court has admonished that "[a] new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). Instead, "the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* (internal quotation marks and citation omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice …." *Id.*

As an appellate court, it "is not [our role] to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation omitted). An argument that the jury's verdict was against the weight of the evidence remains "[o]ne of the least assailable reasons for granting … a new trial …." *Id.* (citation omitted). "Thus, only where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." *Id.* (citation omitted; emphasis in original).

In this case, Appellant avers the jury's verdict was against the weight of the evidence because Officer Correa, Officer Harris, and Jones had been drinking on the night of the incident, Jones used crack cocaine, and Officer Correa's trial testimony differed from his written statement. Appellant's Brief at 45. Appellant essentially argues the jury inaccurately weighed these factors relative to Appellant's testimony as well as other evidence. *Id.*

Instantly, as noted above, the Commonwealth presented three witnesses, Officers Correa and Harris, as well as Jones, all of whom identified Appellant as assaulting Mercado on the night in question. N.T., 1/14/14, at 6, 38, 75-76. Appellant in his brief, and at trial, highlighted inconsistencies among the witnesses' testimony as well as reasons why their ability to recall events may have been impaired. *See generally* Appellant's Brief at 45. However, our cases are emphatically clear that as "an appellate court [we] will not make [our] own assessment of the credibility of the evidence." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "The jury sat as the finder of facts in this case[, and it] was in the best position to view the demeanor of the Commonwealth's witnesses and to assess each witness' credibility." *Id.* In this case, the jury was free to find the Commonwealth's witnesses' trial testimony credible, find Appellant's testimony not credible, and resolve any inconsistencies in the Commonwealth's favor. *See generally Commonwealth v. Horne*, 89 A.3d 277, 286 (Pa. Super. 2014) (concluding

- 18 -

the weight of the evidence claim could not prevail as "the jury resolved the inconsistencies among the testimonies as it saw fit and reached a verdict[]"). The jury was presented with Officer Correa, Officer Harris, and Jones' testimony and Appellant's own testimony. The jury weighed all of the testimony and ultimately concluded that the officers and Jones were credible and Appellant was not credible. As an appellate court, we will not reweigh the evidence and substitute our judgment for that of the fact-finder. **Olsen**, **supra**; **Commonwealth v. Serrano**, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted). Based on these considerations, we conclude the trial court did not commit a palpable abuse of discretion in deciding the jury's verdict was not against the weight of the evidence. **See Morales**, **supra**.

Finally, in his third issue on appeal, Appellant contends the trial court abused its discretion in going outside the sentencing guidelines and imposing the statutory maximum sentence for aggravated assault. Appellant's Brief at 40. The Commonwealth counters that the record reveals the trial court considered all the necessary factors and adequately explained its reasons for the upward departure. Commonwealth's Brief at 36.

At the outset, we note that Appellant's arguments pertain to the discretionary aspects of his sentence. It is axiomatic that in this Commonwealth, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." **Commonwealth v. Tobin**, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted). When an appellant raises an

argument pertaining to the discretionary aspects of the sentence, this Court considers such an argument to be a petition for permission to appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.*

In the case *sub judice*, Appellant filed a timely post-sentence motion and notice of appeal. In addition, Appellant has included a Rule 2119(f)

statement in his brief. We therefore proceed to determine whether Appellant has raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Edwards***, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Provenzano***, 50 A.3d 148, 154 (Pa. Super. 2012).

Instantly, Appellant avers that the trial court erred at sentencing because the imposition of the statutory maximum for aggravated assault was "harsh and excessive" and the trial court gave "inadequate reasons … to justify such a sentence." Appellant's Brief at 37. Appellant also argues that the sentence is unreasonable because his co-defendant was sentenced to a lesser term of three to seven years' imprisonment by a different judge. ***Id.*** Finally, Appellant argues that the trial court did not take into account his employment history or his family life. ***Id.*** at 38.

We note that when a defendant claims that his sentence is excessive because the trial court sentenced outside the guidelines and without explanation, he or she has raised a substantial question for our review. *Commonwealth v. Tirado*, 870 A.2d 362, 365-366 (Pa. Super. 2005) (citations omitted). This Court has also held that a claim of disparate sentencing treatment between co-defendants raises a substantial question. *Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010) (citation omitted), *appeal denied*, 14 A.3d 825 (Pa. 2011). Finally, "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citation omitted). As a result, we grant Appellant's petition for permission to appeal the discretionary aspects of his sentence, and proceed to address the merits of his claims.

We begin with our well-settled standard of review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citations omitted), *appeal denied*, 105 A.3d 736 (Pa. 2014).

- 22 -

We initially recognize that "where the court imposes a sentence outside the sentencing guidelines ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines**.**" ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015); ***accord*** 42 Pa.C.S.A. § 9721(b).  "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b) …. [T]he record as a whole must reflect due consideration by the court of the statutory considerations." ***Commonwealth v. Antidormi***, 84 A.3d 736, 761 (Pa. Super. 2014) (citation omitted; brackets in original), *appeal denied*, 95 A.3d 275 (Pa. 2014).

> [Section 9721(b)] requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation omitted), *appeal denied*, 64 A.3d 640 (Pa. 2013).

In this case, the trial court gave the following statement on the record during sentencing as to why it concluded an upward departure from the guidelines was appropriate in this case.

> I can tell all of you without fear of contradiction that this was an exceedingly difficult case to preside over. When the complainant came out, she was unable to recall any of the occurrences that led to her being, for a long period of time, essentially incapacitated.
>
> This was like something out of a horror movie. Two young men out having a good time, and they decide to go into another area of the city to pick up a prostitute.
>
> And what struck me about [Appellant]'s testimony, and he was a very good witness, is on the one hand his willingness to put most of the blame on his co-defendant, but he did say that once the victim was on the ground and having been kicked repeatedly, in his words, by his co-defendant, he, in an effort to intervene, did not call the authorities or pull the aggressor from the victim. He went over and got down on her and smacked her about the face in order, in his words, to stop her from crying out, because the more she did, the more [his co-defendant] would kick her.
>
> It was very difficult to listen to his testimony, very difficult to listen to the account through the medical records of what this young woman suffered as a result of this beating. This was essentially a failed homicide, two men beating up on a woman for reasons only they are privy to.
>
> I have read the reports, including the mental health evaluation, and the presentence investigation, with great care, and I can tell you that the person documented in the various letters that [Appellant] was so kind to submit to me is not the person who is described in [the Commonwealth]'s sentencing

memorandum, nor was he the person that the jury convicted of this heinous crime.

We are a society of drinkers, and despite the efforts of Mothers Against Drunk Driving and other groups, we remain very forgiving of people who imbibe and then voluntarily put themselves behind the wheel of a ton or 2 tons of steel and propel it throughout the society's streets, highways, and the like. That's akin to, in my humble opinion, firing a gun in a crowd. [Appellant] has done that twice. I'm mindful of the fact that he was given ARD in one instance. I'm mindful of the fact that this is his first felony conviction.

And what is so difficult for the [trial c]ourt is looking at who [Appellant] is on paper and who the jury found him to be. This is a man who's supporting two children. He went to college and is employed. Yet the person [the Commonwealth] presents to the [trial c]ourt is a very different person who goes out and drinks and engages in conduct that is totally inconsistent with what we'd expect of a well-educated person in a civil society.

I have an obligation to impose the least amount of incarceration consistent with [Appellant]'s need for rehabilitation and society's need for protection. I'm mindful of the Superior Court's and the Supreme Court's as well as the legislative imposition on me of my duty. I take into consideration that which has been imposed on me by our appellate courts as well as our legislature. I reviewed and considered all of the reports.

I've given due consideration to [Appellant]'s statements to the [trial] court, but I remain convinced that he was then and he is now a dangerous man. Although I am more often than not given to following the guidelines, this is a case wherein an upward departure is not simply called for but required.

N.T., 4/11/14, at 52-56.

In our view, the trial court's statement is wholly adequate to support its sentence. At the beginning of the sentencing proceeding, the trial court reviewed the guidelines with both parties, and they agreed on what the standard ranges would be. N.T., 4/11/14, at 31. Also, the trial court explicitly stated on the record that it had reviewed the presentence report (PSI). *Id.* at 54. This Court has consistently stated that where "the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Rhoades***, 8 A.3d 912, 919 (Pa. Super. 2010) (internal quotation marks and citation omitted), *appeal denied*, 25 A.3d 328 (Pa. 2011), *cert. denied*, ***Rhoades v. Pennsylvania***, 132 S. Ct. 1746 (2012). However, the trial court believed that based on the seriousness of the offense, the victim's injuries, and its conclusion that Appellant was a danger to society, an upward departure from the guidelines was warranted in this case. Therefore, the trial court complied with Section 9721(b) and Appellant's argument to the contrary lacks merit.

We next turn to Appellant's argument that the trial court abused its discretion in sentencing Appellant because his co-defendant received a substantially shorter sentence.

> The law is well-settled that co-defendants are not required to receive identical sentences. Generally, a sentencing court must indicate the reasons for differences in sentences between co-defendants.

> This is not to say, however, that the court must specifically refer to the sentence of a co-defendant. Rather, it requires that when there is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences.

*Mastromarino*, *supra*. In this case, Appellant's co-defendant received a sentence of three to seven years' imprisonment, but he was tried and sentenced before a different judge. When this occurs, our cases have held that the trial court is not legally required to explain why there is a disparity between sentences. *Commonwealth v. Szczesniewski*, 591 A.2d 1055, 1057 (Pa. Super. 1991), *appeal denied*, 608 A.2d 29 (Pa. 1992); *Commonwealth v. Fuller*, 579 A.2d 879, 887 (Pa. Super. 1990), *appeal denied*, 588 A.2d 508 (Pa. 1991). As Appellant and his co-defendant were not tried nor sentenced before the same judge, the trial court was not required to explain the disparity in order to impose a higher sentence upon Appellant. *Id.* As such, this argument does not entitle Appellant to relief.

Finally, to the extent Appellant argues that the trial court failed to take into account his employment history or his family life, as noted above, the trial court explicitly mentioned both of those factors during sentencing. *See* N.T., 4/11/14, at 55 (describing Appellant as, "a man who's supporting two children[,] … went to college and is employed[]"). In addition, as noted above, the trial court had the benefit of the PSI; hence, we presume that it was aware of these mitigating factors in fashioning its sentence. *See*

*Rhoades*, *supra*. Based on all of the aforementioned considerations, we conclude Appellant's sentencing arguments lack merit and the trial court did not abuse its discretion in sentencing Appellant outside of the guidelines. *See Raven*, *supra*.

Based on the foregoing, we conclude all of Appellant's issues are devoid of merit. Accordingly, the trial court's April 11, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2015