J-S82015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARMELLA ROSE KLOTZ-COOPER | : | |
| | : | |
| Appellant | : | No. 874 EDA 2018 |

Appeal from the Judgment of Sentence February 26, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003000-2017

BEFORE:   LAZARUS, J., OLSON, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 28, 2019**

Carmella Rose Klotz-Cooper (Cooper) appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, following her conviction of four counts of robbery and one count of conspiracy to commit robbery.  After our review, we affirm the judgment of sentence based on the opinion authored by the Honorable William R. Carpenter.

On April 3, 2017, at 11:50 p.m., Cooper and her three co-conspirators committed a home invasion robbery at a residence on County Line Road in Lower Moreland.  While her husband (Matthew Cooper), another woman (Carmen Giddings) and two other men (Xavier Tucker and Daniel Tucker) beat and held the adult victims at gunpoint, Cooper, wearing a gold "Scream"[1]

_____

[1] The "Scream" mask, known as "Ghostface," is from the *Scream* horror movie series and features an elongated open mouth. The mask was inspired by The Scream painting by Edvard Munch.

_____

*   Retired Senior Judge assigned to the Superior Court.

mask, went upstairs to the bedroom of an eight-year old girl. Cooper hit the child with an unknown object, grabbed her by the hair and forced her down the hallways and stairs. The home invaded was that of Matthew Cooper's foster parents.

Following a stipulated bench trial, the court convicted Cooper, and on February 26, 2018, the court sentenced her to a term of imprisonment of nine to twenty years. Cooper filed a post-sentence motion, which was denied. This appeal followed. Both Cooper and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Cooper challenges the discretionary aspects of her sentence, claiming the court failed to consider mitigating factors, including her age, her prior history of sexual abuse and post-traumatic stress disorder, and her potential for rehabilitation. She also challenges her sentence relative to two of her co-conspirators:

> Was there an inadequate statement of reasons particular to each defendant as to why Carmella Klotz-Cooper received a sentence of 9-20 years when co-defendant Xavier Tucker received a sentence of 5½ - 12 years after he was found guilty of grabbing a woman by the throat to wake her up then taking her cane and beating another man over the head; and when co-defendant Carmen Giddings received a sentence of 3-10 years when she was a full participant in the home invasion?

Appellant's Brief, at 2.

Cooper properly preserved these issues in her February 28, 2018 post-sentence motion, filed a timely appeal on March 28, 2018, and has provided a statement pursuant to Pa.R.A.P. 2119(f) in her appellate brief. **_See_**

Appellant's Brief, at 7.  **See also Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011); **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010).  With respect to her claim that the court failed to consider mitigating factors, we find no substantial question.  **See  Commonwealth v. Kane**, 10 A.3d 327, 335–36 (Pa. Super. 2010) (finding claim "that the court gave inadequate consideration to certain mitigating factors, does not raise a substantial question"); **Commonwealth v. Rhoades**, 8 A.3d 912, 918–19 (Pa. Super. 2010) ("an allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial question for our review."); **see also Commonwealth v. DiSalvo**, 70 A.3d 900 (Pa. Super. 2013) (failure to give adequate weight to mitigating circumstances does not present substantial question); **Commonwealth v. Rhoades**, 8 A.3d 912 (Pa. Super. 2012) (same).[2]

_____

[2] We note that this same allegation raised in the context of an aggravated-range sentence may raise a substantial question.  **See, e.g.**, **Commonwealth v. Felmlee**, 828 A.2d 1105, 1107 (Pa. Super. 2003) (en banc) (substantial question raised where appellant alleged sentencing court imposed sentence in aggravated range without adequately considering mitigating circumstances). Here, Cooper faced a maximum sentence of 50-100 years' imprisonment; the court sentenced her in the standard range of the Sentencing Guidelines. Moreover, Cooper's claim that the court failed to consider mitigating circumstances is contradicted in the record.  **See** N.T. Sentencing, 2/26/18, at 49-51.  **See also Commonwealth v. Fowler**, 893 A.2d 758, 766–67 (Pa. Super. 2006) (where sentencing court had presentence report, we are required to presume court properly weighed mitigating factors).

With respect to her claim of disparate sentences,[3] we find Cooper has raised a substantial question. **See Commonwealth v. Cleveland**, 703 A.2d 1046 (Pa. Super. 1997) (holding substantial question raised where appellant averred unexplained disparity between his sentence and that of co-defendant); **Commonwealth v. Krysiak**, 535 A.2d 165, 167 (Pa. Super. 1987) ("[D]isparate sentences between two or more co-defendants constitutes a substantial question necessitating our exercise of jurisdiction to review."). However, we conclude Cooper is not entitled to relief on this claim.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Rodda**, 723 A.2d 212, 214 (Pa. Super. 1999) (en banc) (internal quotations and citations omitted).

Our legislature has determined that for each defendant, "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the

---

[3] The two co-defendants to whom Cooper refers, Xavier Tucker and Carmen Giddings, were sentenced on April 20, 2018, after Cooper filed this appeal and after the trial court filed its Rule 1925(a) opinion. Cooper filed a motion in this Court seeking amendment of her Rule 1925(b) statement, which this Court granted. **See** Order, 6/13/18. The trial court filed a supplemental Rule 1925(a) opinion on July 30, 2018.

defendant." 42 Pa.C.S.A. § 9721(b). Because each co-defendant in a crime may pose a different threat to the community and may have different rehabilitative needs, it is not required that co-defendants receive identical sentences. *See Commonwealth v. Mastromarino*, 2 A.3d 581, 589 (Pa. Super. 2010); *Commonwealth v. Krysiak*, 535 A.2d 165, 167 (Pa. Super. 1987). Further, it is well-settled that "there should not be a great disparity in the sentences imposed on co-defendants unless facts exist to warrant the unequal sentences." *Commonwealth v. Szczesniewski*, 591 A.2d 1055, 1056 (Pa. Super. 1991) (quoting *Commonwealth v. Holler*, 473 A.2d 1103, 1107 (Pa. Super. 1984)). Our Superior Court further cautioned that judges "should endeavor to mete out similar sentences to co-defendants when justice so dictates." *Szczesniewski*, 591 A.2d at 1057 n.2. In order for different sentences to withstand appellate scrutiny, a sentencing court must give reasons particular to each defendant explaining why each received individual sentences. *Mastromarino*, 2 A.3d at 589 (citing *Krysiak*, 535 A.2d at 167).

In this case, the sentencing court provided ample reasons for Cooper's sentence, including, in particular, her role in terrorizing an eight-year child, the lifelong impact that her crimes will have on that child and the other victims, as well as her role in planning the home invasion. The court set forth the reasons for sentencing Cooper in its on-the-record statement in open court, *see* N.T. Sentencing, *supra* at 51-52 ("This defendant is instrumental in the planning and the execution of the crimes here. . . . These victim were brutally terrorized, . . . and this defendant, in particular, grabbed the young

- 5 -

child by the arm and pulled her by the hair. There was force throughout this crime that was excessive and unnecessary[.]"). Additionally, in its supplemental opinion, the court clearly explained its reasons for the disparate sentences, noting that Cooper awakened the child by striking her with an object on the head, and that when the child opened her eyes, she saw a person wearing a gold "Scream" mask above her. The court gave reasons particular to Cooper and co-defendants Tucker and Giddings, explaining why each received a specific and individualized sentence, and stating that Cooper's sentence "is appropriately longer than of her two co-defendants because it reflects her serious involvement in this crime where she willingly terrorized and brutalized an 8-year old victim. It also reflects that she was instrumental in planning and executing the crime." Pa.R.A.P. 1925(a) Supplemental Opinion, 7/30/18, at 11. *See Commonwealth v. Cleveland*, *supra* at 1048 ("[W]hen there is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why [he or she] received [his or her individual sentence]."). We find no abuse of discretion. *Rodda*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/19

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :        CP-46-CR-0003000-2017

            V.              :

                    :         **874 EDA 2018**

CARMELLA KLOTZ-COOPER       :

## SUPPLEMENTAL OPINION

**CARPENTER J.**                            **JULY 30, 2018**

### FACTUAL AND PROCEDURAL HISTORY

This Supplemental Opinion was ordered by the Pennsylvania

Superior Court to address the disparity in the sentences received by Carmella

Klotz-Cooper ("Appellant") and those of her two co-defendants, Xavier Tucker

("X. Tucker") and Carmen Giddings ("Giddings"), who were sentenced after the

filing of the original 1925(a) Opinion in this appeal.[1][2]

For the purpose of this Supplemental Opinion, this Court relies on

the basic factual and procedural history as set forth in its 1925(a) Opinion

dated April 17, 2018.

---

[1]   On May 17, 2018, appellate counsel filed in the Pennsylvania Superior Court a petition for remand to amend the concise statement of errors complained of on appeal because of the disparity between Appellant's sentence and that of her co-defendants that was imposed after first timely filed 1925(b) concise statement. It was granted on June 13, 2018. The order permitted appellate counsel to file a supplemental Pa.R.A.P. 1925(b) statement and ordered this Court to address this additional issue, giving rise to this Supplemental Opinion.

[2]   Appellate counsel's supplemental 1925(b) statement includes the disparity of sentences issue and also reiterates the issue he asserted in his original 1925(b) statement, which was addressed in this Court's 1925(a) Opinion dated April 17, 2018.

## ISSUE

I. Whether the disparity between Appellant's sentence and those of her co-defendants was explained with an adequate statement of reasons particular to each defendant.

## DISCUSSION

I. The disparity between Appellant's sentence and those of her co-defendants was explained with an adequate statement of reasons particular to each defendant.

Appellant contends that there was an inadequate statement of reasons particular to each defendant as to why she received a sentence of 9 – 20 years' imprisonment when her co-defendant, X. Tucker, received a sentence of 5½ to 12 years' imprisonment after he was found guilty of grabbing a woman by the throat to wake her and then taking her cane and beating another man over the head until the point where had to be hospitalized and co-defendant, Giddings, received a sentence of 3 to 10 years' imprisonment, when she was a full participant in the home invasion.

This issue does raise a substantial question. Commonwealth v. Cleveland, 703 A.2d 1046 (Pa.Super.1997) (holding substantial question raised where the appellant averred an unexplained disparity between his sentence and that of his co-defendant); Commonwealth v. Krysiak, 535 A.2d 165, 167 (1987) ("[D]isparate sentences between two or more co-defendants constitutes a substantial question necessitating our exercise of jurisdiction to review."). This claim, however, is meritless.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a

2

manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. Commonwealth v. Grays, 167 A.3d 793, 816 (Pa.Super. 2017) (citation omitted).

The law is well-settled that co-defendants are not required to receive identical sentences. See Krysiak, supra. Generally, a sentencing court must indicate the reasons for differences in sentences between co-defendants. Krysiak, supra. "This is not to say, however, that the court must specifically refer to the sentence of a co-defendant. Rather, it requires that when there is a disparity between co-defendants' sentences, a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences." Commonwealth v. Mastromarino, 2 A.3d 581, 589 (Pa.Super. 2010) (quoting Cleveland, 703 A.2d at 1048).

On November 21, 2017, both X. Tucker and Giddings proceeded to a joint stipulated non-jury trial, in which they stipulated to the same facts that Appellant stipulated to at her stipulated non-jury trial on December 5, 2017. In relevant part, X. Tucker and Giddings agreed that X. Tucker punched and pushed the victim, Mr. Sager, causing him to fall backwards down the steps. (Stipulated Bench Trial 11/21/17 p. 15). He followed Mr. Sager down the stairs and began to hit him over the head with a metal cane. Id. Mr. Sager sustained a large abrasion to his left shoulder, and required medical attention. Id. He was

3

transported to a nearby hospital by ambulance. It was discovered that the item Sager had been assaulted with was a walking cane, which was discovered at the scene of the assault. Id.

In addition, X. Tucker and Giddings agreed that X. Tucker suddenly awakened victim Brenda Davis, who was asleep on the couch in the living room. Id. at 16. He grabbed Mrs. Davis by her throat and pulled her off the couch while co-defendant Giddings watched. Id. X. Tucker asked Mrs. Davis who else was in the home, and she said her son was in the basement. Id. at 16 – 17. X. Tucker then grabbed Mrs. Tucker's walking cane and walked over to the basement door leaving Giddings to watch Mrs. Davis. Id. at 17. At the conclusion of the stipulated non-jury trial, both X. Tucker and Giddings were found guilty of conspiracy and four counts of robbery.

By way of comparison Appellant agreed at her stipulated non-jury trial that her role in this home invasion was that she awakened and struck, Kaylee Davis, an eight-year-old girl who was sleeping in her bed, in her head with an unknown object. _(Stipulated Bench Trial 12/5/17 p. 17). When Kaylee opened her eyes, she saw a person later identified as Appellant standing over her. Id. Appellant grabbed Kaylee by her hair and dragged her down the hallway by her hair and arm. Id. She held her hand over Kaylee's mouth when Kaylee screamed for help. Id. Appellant was also convicted of conspiracy and four counts of robbery.

4

On February 26, 2018, Appellant was sentenced. This Court, in explaining its reasons for the sentence it was about to impose, stated as follows:

> The Court does have the benefit of information, which I have carefully considered. That does include the sentencing code, the sentencing guidelines, the Presentence Investigation and Report, the material submitted on behalf of the defendant by Mr. McElroy in the way of a sentencing statement, letters on behalf of the defendant that were submitted to the Court and given to counsel and the information that was supplied today together with the arguments of the attorneys.
>
> Just dealing for a moment with the sentencing guidelines, we are dealing with a felony one, level five offenses, offense gravity score of nine and ten.
>
> The comment to the sentencing guidelines which I do recognize fully are merely guidelines say as follows: Both level five provides sentencing recommendations for the most violent offenders, conviction has offense gravity score of nine or greater. The standard range requires state incarceration in a state facility.
>
> The primary purpose of the sentencing options at this level [is] punishment commensurate with the seriousness of the criminal behavior and incapacitation to protect the public.
>
> We do also have the PPI evaluation which has been referred to and the Presentence Investigation and Report. Mr. McElroy did refer to the aspects of the PPI evaluation.
>
> In short, I find major depressive disorder, post-traumatic stress disorder, serve alcohol use disorder, server cannabis use disorder, and a series of recommendations for treatment.
>
> The Presentence Investigation and Report sets forth the defendant's statement regarding the offense. She said she wanted to apologize to the Davis family. She

5

wishes she could take her actions back and she takes full responsibility for her actions. She does admit to dragging Kaylee down the hall by her hair and knows that she grabbed her arm.

It is true here that this defendant is a first offender. This is the first criminal offense.

The family situation background is set of the in the report and supplemented, of course, by the testimony today. I carefully considered that.

It is very true that this is a defendant who did not have [a] childhood at all, did not have a proper childhood: Sexually abused repeatedly at a young age, introduced to drugs and alcohol at a young age.

I have indicated that the diagnosis of the PPI. From age fourteen to sixteen, she used methamphetamines daily. There was marijuana, cocaine tried once, and alcohol and other drugs.

The defendant graduated from high school - - I mean she went to high school and did not earn her degree until she was incarcerated in Montgomery County Prison.

She does have two children that are in the custody of her Aunt Margaret.

She had some employment from time to time, Five Guys from September, 2016 to May of 2017. She also worked at Giant. She worked at a diner.

The defendant was significantly involved in this criminal activity for which the criminal activity is of a most serious and violent nature. The criminal activity is not to be justified or excused. The criminal activity is not forgiven by the fact that she was victimized and brutalized as a child in a horrible, horrible way.

We have four victims here all threatened with serious bodily injury. One injured to the extent of requiring stiches and other treatment.

6

They entered the building, the home of these people, the one defendant carrying what the victims would believe to be a gun and other weapons being employed throughout this event.

As I indicated previously, they acted with malice, a willingness to plan and engage in the underlying robbery so that had if Mr. Sager died they would have faced felony murder charges.

The defendant [was] instrumental in the planning and the execution of the crimes here. It would not be [a] difficult job of the sentencing Judge to justify consecutive sentences for each of the victims here even separately for conspiracy.

Clearly in my view, a significant prison sentence is appropriate here. A state prison sentence is appropriate here. A county prison sentence is not appropriate in my view given the nature and severity of the crime.

Quite clearly the impact of the crimes on the victims and the society in whole is severe. We heard victim impact testimony today. Quite clearly people do need to be able to feel secure in their own homes with such an invasion life this from these kinds of criminals.

These victims were brutally terrorized, treated horribly, and this defendant, in particular, grabbed the young child by the arm and pulled her by the hair. There was force throughout this crime that was excessive and unnecessary to accomplish the goal of the crime. These victims clearly had no ability to resist and no match for these criminals in any way, shape or form.

(Sentencing 2/26/18 pp. 48 – 53).

On April 20, 2018, both X. Tucker and Giddings were sentenced at a joint sentencing hearing. First Giddings was sentenced, with this Court stating the following reasons for the sentence it imposed:

7

All right. Thank you. Well, this Court does have the benefit of a presentence investigation, which I have carefully considered.

I've also considered the sentencing code, the sentencing guidelines, the information presented today on behalf of this Defendant.

\*\*\*

I do believe that this Defendant does show genuine remorse for her actions.

The criminal history is insignificant insofar as she only has a conviction for a summary retail theft and then the present offense.

Her family situation and background is set forth in the report at length, I have considered that.

She does have depression. That was diagnosed in 2017. She had counseling when she was out on bail and otherwise led a law-abiding life during that period of time.

\*\*\*

Obviously, she does have supportive family and friends, which I have taken into account.

On the other hand, there is a very serious crime here. This Defendant was involved that included threatening behavior; potential weapons, what appeared to be a real gun to the victims; and that includes four victims, all threatened with serious bodily injury and one that actually required medical attention for stiches and other injuries to the head and so on. One of the victims was a child.

There certainly was malice in their actions. If Mr. Sager had dies, they would have faced potential felony murder charges here.

\*\*\*

8

I will comment that her willingness to cooperate and they way she handled this case is to her benefit. She was willing to testify if needed. She was willing to do that early on. She did make a statement confessing to the crime and entered into a stipulated bench trial, which is the equivalent of an open guilty plea in my mind.

\*\*\*

As indicated by Defense Counsel, she did not actually physically inflict and excessive harm, but as a conspirator, as stated by counsel, she was legally and morally responsible for the actions of her Co-defendants that occurred in this setting.

\*\*\*

I do recognize that this Defendant has the potential to do some good deeds in her life when she accepts and receives her punishment here.

Id. at 33 – 36. Based upon these reasons, this Court sentenced Giddings to an aggregate term of 3 to 10 years' imprisonment. Id. at 37.

As to X. Tucker, this Court in relevant part explained its reasons for the sentence it was to impose as follows:

All right. I'll state the reasons for the sentence I will impose.

Once again, I have the benefit of a pre-sentence investigation and report which I have carefully considered.

In this case by this Defendant, we also have a PPI evaluation and summary which talks about things such as drug-and-alcohol, mental-health issues, things of that sort.

\*\*\*

9

He did express to the Commonwealth a willingness to testify against Co-defendants if needed. That is significant.

Additionally, he willingly entered into the stipulated bench trial, which is viewed by this Court as equivalent to an open plea of guilty. He did not put the victims through a contested trial.

\*\*\*

He has also exercised his right of allocution and had written a letter to the Court expressing his remorse and knowing that what he did was extremely wrong and stating, quote, I was raised better and know better.

He's indicated that his year I jail or so has helped him make decision concerning the direction of his life. His life was going in the wrong was as indicated in part by his criminal history.

\*\*\*

Quite obviously, this Defendant was fully involved in this crime. He is criminally responsible for the acts of his Co-defendants for this crime of violence, a crime that was certainly designed to threaten people with serious bodily injury, put them in fear and terrorize them, and that is what was done.

There was a - - what appeared to be a handgun used. A cane was used. There was a hammer in the hand of one of the Defendants. The four vicitms all were threatened serious bodily injury. On is a child who was pulled by the hair. And the one person who was struck with a cane required stiches, which is a significant injury..

The Defendants did act with malice.

\*\*\*

(Sentencing 4/20/18 pp. 48 – 52). Based upon this reasoning, this Court

sentenced X. Tucker to an aggregate term of 5½ to 12 years' imprisonment. Id.

at 53.

A reading of these statements evidences that this Court indicated the reasons for the differences in the sentences between these three co-defendants, and this Court did give reasons particular to each defendant explaining why they received their individual sentences. Appellant's sentence is appropriately longer than of her two co-defendants because it reflects her serious involvement in this crime where she willingly terrorized and brutalized an 8-year old victim. It also reflects that she was instrumental in planning and executing the crime.

By way of comparison, Giddings, in her role in the crime, did not actually physically inflict or use excessive force. Giddings cooperated with the Commonwealth early in the investigation and was willing to testify. As such, her sentence, which is the shortest of the three co-defendants, reflects these factors. As to X. Tucker, he was remorseful and also cooperated with the Commonwealth early on. And because he brutalized Mr. Sager using physical violence he received a longer sentence than that of Giddings. Clearly it was appropriate to sentence Appellant to the longest sentence because she brutalized a child and was instrumental in the planning and execution of this violent crime. Therefore, the disparity between the co-defendants' sentences is well justified and these reasons were stated on the record. This claim of error on appeal lacks merit.

11

## CONCLUSION

Based upon the foregoing analysis, Appellant's judgment of sentence imposed on February 26, 2018, should be affirmed.

BY THE COURT:

_William R. Carpenter_

WILLIAM R. CARPENTER     J.
COURT OF COMMON PLEAS
MONTGOMERY COUNTY
PENNSYLVANIA
38TH JUDICIAL DISTRICT

**Copies sent on July 30, 2018**
**By Interoffice Mail to:**
Court Administration

**By First Class Mail to:**
William R. McElroy, Esquire
101 E. Moreland Avenue
Hatboro, PA 19040